Geary H. Walton #037353
Name and Prisoner/Booking Number

ASPC-E- Cook Unit
Place of Confinement

P.O.Box 3200
Mailing Address

Florence AZ 85132
City, State, Zip Code

☒ FILED    ☐ LODGED

# OCT 02 2023

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Geary Wayne Walton ,
(Full Name of Petitioner)

          Petitioner,

v.

Ryan Thornell et al. ,
(Name of the Director of the Department of
Corrections, Jailor or authorized person having custody
of Petitioner),

          Respondent,
          and
The Attorney General of the State of Arizona ,

          Additional Respondent.

CASE NO. CV-23-2070-PHX-DLR (JFM)
        (To be supplied by the Clerk)

**PETITION UNDER 28 U.S.C. § 2254
FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
(NON-DEATH PENALTY)**

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: Maricopa County Superior Court (Phoenix)

   (b) Criminal docket or case number: CR1987-009953

2. Date of judgment of conviction: October 17, 1988

3. In this case, were you convicted on more than one count or crime? Yes ☒ No ☐

**530**

4. Identify all counts and crimes for which you were convicted and sentenced in this case: _One count attempted sexual abuse, eight count sexual conduct involving minor, and sexual indecent exposure with minor one count._

5. Length of sentence for each count or crime for which you were convicted in this case: _Aggravated 35-years attempt sexual abuse, aggravated life without possibility of parole for 35-years on each of the eight counts, and an aggravated 6-years for indecent exposure. All sentences to be served consecutive for a total 103-years._

6. (a) What was your plea?
   Not guilty ☐
   Guilty ☒
   Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _N/A_

   (c) If you went to trial, what kind of trial did you have?  (Check one) Jury ☒ Judge only ☐

7. Did you testify at the trial?        Yes ☐        No ☒

8. Did you file a direct appeal to the Arizona Court of Appeals from the judgment of conviction?
   Yes ☒     No ☐

   If yes, answer the following:

   (a) Date you filed: _In 1990_

   (b) Docket or case number: _1 CA-CR 90-1304_

   (c) Result: _convictions & commitments affirmed in an unpublished decision_

   (d) Date of result: _September 10, 1991_

   (e) Grounds raised: _Some crazy issue of the jury denied a magnifying glass to review evidence requested and two additional claims unavailable._

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

2

9. Did you appeal to the Arizona Supreme Court?  Yes ☒    No ☐

If yes, answer the following:

(a) Date you filed: _Sometime after the March 9, 1992 mandate issued from Appeals Court._

(b) Docket or case number: _Unavailable_

(c) Result: _Review was denied_

(d) Date of result: _Unavailable_

(e) Grounds raised: _Unavailable_

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

10. Did you file a petition for certiorari in the United States Supreme Court?    Yes ☒    No ☐

If yes, answer the following:

(a) Date you filed: _Unavailable_

(b) Docket or case number: _Unavailable_

(c) Result: _Affirmed via review denied_

(d) Date of result: _Unavailable_

(e) Grounds raised: _Unavailable_

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

11. Other than the direct appeals listed above, have you filed any other petitions, applications or motions concerning this judgment of conviction in any state court?  Yes ☒    No ☐

If yes, answer the following:

(a)  First Petition.

(1)  Date you filed: _Jan 1995_

(2)  Name of court: _U.S. Dist. Court of AZ (Phoenix)_

(3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _Habeas corpus_

(4)  Docket or case number: _CV-01606-EHC, No. 14-15383, Walton v. Ryan; No. 11-005768-PHX-ROS; No. 02-70153 and No. 10-72604_

(5)  Result: _Affirmed_

(6)  Date of result: _Unavailable_

(7)  Grounds raised: _Unavailable_

_____

_____

_____

_____

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

(b)  Second Petition.

(1)  Date you filed: _October 25, 2019_

(2)  Name of court: _Maricopa County Superior Court (Phoenix)_

(3)  Nature of the proceeding (Rule 32, special action or habeas corpus): _state habeas corpus_

(4)  Docket or case number: _CR1987-009953, CR1987-01026-1 'consolidated' in CR1987-009953_

(5)  Result: _Relief denied_

(6)  Date of result: _01/11/2023_

(7)  Grounds raised: _That Petitioner suffered from traumatic brain injury ("TBI") and PTSD and other mental health/medical issues prior to and at the time of his alleged crimes, tried while incompetent without counsel or counsel assistance, repeatedly drugged with mind-altering drugs and repeatedly raped sexually by Undercover Officer Helen Newsom and other officials, in complete nudity, during interrogation, and this discovery withheld from disclosure in petitioner's defense, including but not limited to, electronic surveillance of his homes/vehicles and challenge to veracity of warrant(s)._

Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.

(c)  Third Petition.

    (1)  Date you filed: 08/04/2022

    (2)  Name of court: U.S. Dist. Court of AZ (Phoenix)

    (3)  Nature of the proceeding (Rule 32, special action or habeas corpus): §1983 Complaint

    (4)  Docket or case number: 2:22-cv-01277-DLR-JFM

    (5)  Result: Denied

    (6)  Date of result: 08/11/2023

    (7)  Grounds raised: Motion to Alter or Amend / Correct [Dkt. 34] Clerk's Judgment filed 08/23/2023.

**Attach, if available, a copy of any brief filed on your behalf and a copy of the decision by the court.**

(d)  Did you appeal the action taken on your petition, application, or motion to the:

|  | Arizona Court of Appeals: | | | Arizona Supreme Court: | | |
|---|---|---|---|---|---|---|
| (1) First petition: | Yes ☒ | No ☐ | | Yes ☒ | No ☐ | |
| (2) Second petition: | Yes ☒ | No ☐ | | Yes ☒ | No ☐ | |
| (3) Third petition | Yes ☒ | No ☐ | | Yes ☒ | No ☐ | |

(e)  If you did not appeal to the Arizona Court of Appeals, explain why you did not: N/A

12.  For this petition, **state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States**.  Attach additional pages if you have more than four grounds.   State the <u>facts</u> supporting each ground.

    <u>**CAUTION:**  To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.   Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND ONE:** Petitioner suffered from traumatic brain injury and PTSD and other mental health/medical issues prior to and at the time of his crimes alleged.

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

In CR1987-009953, CR1987-010264 "consolidated" for trial. Petitioner in his State Habeas Corpus petition filed 10/25/2019 submitted therewith, newly-discovered material evidence supporting his claim that he suffered traumatic brain injury and PTSD at the time of trial and was tried while incompetent. Thus, warranting reversal of his convictions or a reduction of his sentences. See Attachments & Exhibits. This diagnosis was based upon the actual injuries and ailments suffered by Petitioner from 1979, to date. See "Supplemental Exhibits in support of Petition for Writ of Habeas Corpus (filed 10/25/2019)". Yet, denied because Petitioner believed his competency test/hearing - TBI, PTSD and mental health/medical issues - required competent complete counsel assistance, without further impediments by trial court or the state where petitioner had presented a colorable claim of such "constitutional magnitude" and "law". Petitioner as the criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel.

(b) Did you present the issue raised in Ground One to the Arizona Court of Appeals?    Yes ☒    No ☐

(c) If yes, did you present the issue in a:
        Direct appeal      ☐
        First petition      ☐
        Second petition   ☐
        Third petition     ☐

(d) If you did not present the issue in Ground One to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground One to the Arizona Supreme Court?    Yes ☒    No ☐

**GROUND TWO:** Government agent or prosecutorial misconduct interference with Defense Witness(es).

_____
_____
_____
_____

(a)   Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):

Petitioner in this case, while on pre-trial bail to the custody of Undercover Officer Helen Newsom was repeatedly drugged with mind-altering drugs and repeatedly raped sexually by Officer Newsom and other officials, in the nude, during interrogations while petitioner suffered severe chronic mental health/medical issues and his prescription meds addiction resulting from multiple gunshot wounds to the head. During this time above, having accompanied Petitioner to arrange an interview between the store manager and trial counsel, Officer Newsome returned and persuaded the manager who took T.W., K.V-1 & K.V-2 into his store on the date in question in CR1987-009953, not to testify in Petitioner and Jocelyn's defense. The store manager was allegedly protecting T.W., K.V-1 & K.V-2 from a male stranger who chased them into his store. The store manager then summoned the Petitioner and Jocelyn Vinson by phone to come to his store located at 42nd Avenue and Bethany Home Rd., in Phoenix, to come retrieve T.W., K.V-1 & K.V-2 which we did do. Moreover, in CR1987-010264, the only parties engaged in the sexual threesome only involved the Petitioner, Officer Helen Newsom and Ray Green, inside Ray Green's mobile home, in Phoenix. Yet, the foregoing discovery all was withheld from disclosure in Petitioner's defense hindering his ability to present a complete of truth to his trial jurors which would certainly have altered their verdicts, including but not limited to, the police and medical reports, audiotapes and videotapes electronic recordings surveillance gathered in this case. None... of which was explored by counsel in this instance at any stage from inception.

_____
_____
_____
_____
_____

(b)  Did you present the issue raised in Ground Two to the Arizona Court of Appeals?   Yes ☒          No ☐

(c)  If yes, did you present the issue in a:
> Direct appeal           ☐
> First petition          ☐
> Second petition         ☐
> Third petition          ☐

(d)   If you did not present the issue in Ground Two to the Arizona Court of Appeals, explain why: _____

_____
_____
_____

(e)  Did you present the issue raised in Ground Two to the Arizona Supreme Court?   Yes ☒          No ☐

**GROUND THREE:** Double Jeopardy/Multiple punishment/Same offense

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim.):

The Petitioner is currently imprisoned serving multiple life-terms in CR97176 on lewd and lascivious acts under CR1987-009953. However, the sentence and judgment in CR97176 already was satisfied and completed under the laws in effect at the time of the offense alleged which govern and control here. The state of Arizona Department of Corrections issued Petitioner his certificate of absolute discharge mandated from the sentence and judgment imposed in CR97176 in compliance with the requirements of federal and state constitutions and law. The discharge was effective on June 15, 1983; yet, it was walked-back on in CR1987-009953 in 1988. Accordingly, Petitioner hereby respectfully requests post-conviction DNA testing, contending that the results could provide exculpatory results, which could be a basis for proving petitioner's actual innocence in CR1987-00995, CR1987-010264 and CR97176. including the four counts in CR1987-010264 remanded to the Maricopa County Grand Jury and never came back that petitioner also was tried on but acquitted.

(b) Did you present the issue raised in Ground Three to the Arizona Court of Appeals?   Yes ☒     No ☐

(c) If yes, did you present the issue in a:
    Direct appeal          ☐
    First petition         ☐
    Second petition        ☐
    Third petition         ☐

(d) If you did not present the issue in Ground Three to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Three to the Arizona Supreme Court?   Yes ☒     No ☐

**GROUND FOUR:** Newly-discovered diagnosis and colorable claim of mental health/medical issues.

(a)  Supporting FACTS (Do not argue or cite law.   Just state the specific facts that support your claim.):

Here, Petitioner's claims in this case are newly-discovered existing at the time of trial but discovered and hereby presented after the trial for counsel's failure to conduct investigation into his mental health/medical issues for "switching-sides" to aide the state.

While Petitioner may have been aware that his mental health/medical condition was not stable, he was certainly not aware that he suffered to such an extent of TBI and PTSD diagnosed. Had the trial court been aware that such mental/medical diseases known as traumatic brain injury or post-traumatic stress disorder existed prior to and at the time of the offenses charged in the trial of this case, that Petitioner suffered from it as a direct result of multiple gunshot wounds to the head in 1979, and that the disorder was a causitive factor leading to the allegations of the crimes against him, the court might well have issued a different judgment or imposed a far less severe or different sentence against the petitioner.

(b) Did you present the issue raised in Ground Four to the Arizona Court of Appeals?    Yes ☒          No ☐

(c) If yes, did you present the issue in a:
         Direct appeal            ☐
         First petition           ☐
         Second petition          ☐
         Third petition           ☐

(d)   If you did not present the issue in Ground Four to the Arizona Court of Appeals, explain why: _____

(e) Did you present the issue raised in Ground Four to the Arizona Supreme Court?    Yes ☒          No ☐

9

**Please answer these additional questions about this petition:**

13. Have you previously filed any type of petition, application or motion in a federal court regarding the conviction that you challenge in this petition?    Yes ☒    No ☐

If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.   Attach a copy of any court opinion or order, if available: June 12, 2023, U.S. Court of Appeals, Ninth Circuit, No. 23-1152, application for second or successive writ of habeas corpus, pending currently. See Attachments. And on July 25, 2022, U.S. District Court of Arizona (Phoenix), No. 2:22-cv-01277-DLR-JFM, 31983 civil rights complaint, August 11, 2023, see Attachments.

14. Do you have any petition or appeal <u>now pending</u> (filed and not decided yet) in any court, either state or federal, as to the judgment you are challenging?    Yes ☒    No ☐

If yes, give the date of filing, the name and location of the court, the docket or case number, the type of proceeding, and the issues raised:   See (Section #13, noted above). And on August 23, 2023 filed "Motion to Alter or Amend Judgment.

15. Do you have any future sentence to serve after you complete the sentence imposed by the judgment you are challenging?    Yes ☐    No ☒

If yes, answer the following:

(a) Name and location of the court that imposed the sentence to be served in the future:
N/A

(b)  Date that the other sentence was imposed: N/A

(c)  Length of the other sentence: N/A

(d)  Have you filed, or do you plan to file, any petition challenging the judgment or sentence to be served in the future?    Yes ☐    No ☒

16. TIMELINESS OF PETITION: If your judgment of conviction became final more than one year ago, you must explain why the one-year statute of limitations in 28 U.S.C. § 2244(d) does not bar your petition.*

In the U.S. Court of Appeals, Ninth Circuit No. 14-15849, Petitioner was treated as a pro se litigant in challenging his convictions and sentences here. However, the Clerk's record in the Ninth Circuit did not perfect the Court had adjudicated the appeal. However, from 2014 until 2023, on appeal, as a pro se litigant [DKT. 15 et seq.]. However, in a 2017 motion filed by Petitioner was rejected because he had counsel Mace J. Victor [DKT. 39, 40, 41 and 42.].

*Section 2244(d) provides in part that:
   (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of-
      (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
      (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
      (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
      (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
   (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

17. Petitioner asks that the Court grant the following relief: Permanent discharge, all counts charged; alternatively, he requests the court appoint counsel to represent him on this Petition and set and evidentiary, competency and Franks hearing [vagueness] challenges to affidavit to warrant suppressed] or oral arguments for lack of counsel or counsel assistance at trial, and since, in this matter,

or any other relief to which Petitioner may be entitled.  (Money damages are not available in habeas corpus cases.)

    I declare under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _September 26, 2023_____(month, day, year).

_____
**Signature of Petitioner**

_____     _____
Signature of attorney, if any                     Date

# ASPC Eyman / Cook Resource Library
## Patron Document List
### For: 037353 WALTON, GEARY W

| Type | Date | Description | Copy | Notary |
|------|------|-------------|------|--------|
| E-FILE SUBMISISONS | 08/28/2023 | Rec'd NEF Doc #35 (cv-01277) Motion to Alter or Amend | 0 | 0 |
| E-FILE SUBMISISONS | 08/23/2023 | E-file, 50 pages, Motion to Alter or Amend Judgment | 0 | 0 |
| E-FILE SUBMISISONS | 08/15/2023 | Rec'd NEF Doc #32 (cv-01277) Order | 0 | 0 |
| E-FILE SUBMISISONS | 08/15/2023 | Rec'd NEF Doc #33 (cv-01277) Fourth Amended Complaint | 0 | 0 |
| E-FILE SUBMISISONS | 08/15/2023 | Rec'd NEF Doc #(cv-01277) Order, Fourth Amended Complaint, Clerk's Judgement | 0 | 0 |
| E-FILE SUBMISISONS | 08/03/2023 | Rec'd NEF Doc #31 (cv-01277) Motion to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 08/01/2023 | E-file, 55 pages, Third Motion for Leave | 0 | 0 |
| E-FILE SUBMISISONS | 07/19/2023 | Rec'd NEF Doc #29,30 (cv-01277) Motion to Amend, Lodged Proposal | 0 | 0 |
| E-FILE SUBMISISONS | 07/18/2023 | E-file, 3 pages, Motion for Leave to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 07/10/2023 | E-file, 164 pages, Civil Complaint, Petition, Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 07/10/2023 | Rec'd NEF Doc #26,27,28 (cv-01277) Motion to Appoint, Motion to Amend, Lodged Prop | 0 | 0 |
| E-FILE SUBMISISONS | 06/21/2023 | E-file, 55 pages, (23-1152) Motion for Leave to Amend (Returned Documents to inmate. | 0 | 0 |
| E-FILE SUBMISISONS | 06/15/2023 | E-file, 3 pages, Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 06/13/2023 | E-file, 3 pages, Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 06/13/2023 | E-file, 100 pages, (Ninth) Second or Successive Petition | 0 | 0 |
| E-FILE SUBMISISONS | 06/13/2023 | E-file, 3 pages, (Ninth) Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 05/23/2023 | Rec'd NDA Doc #6 (23-70008) Order | 0 | 0 |
| E-FILE SUBMISISONS | 05/10/2023 | Rec'd NDA Doc #5 (23-70008) Motion to Apply Application of Law | 0 | 0 |
| E-FILE SUBMISISONS | 05/09/2023 | E-file, 15 pages, (Ninth) Motion to Apply Application of Law | 0 | 0 |
| E-FILE SUBMISISONS | 05/01/2023 | E-file, 14 pages, (Ninth) Motion for First Leave | 0 | 0 |
| E-FILE SUBMISISONS | 04/20/2023 | Rec'd NDA Doc #4 (23-70008) Motion to Appoint Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 04/18/2023 | E-file, 26 pages, (Ninth) Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 04/17/2023 | Rec'd NEF Doc #25 (cv-01277) Motion for Appointment | 0 | 0 |
| E-FILE SUBMISISONS | 04/17/2023 | Rec'd NEF Doc #24,25 (cv-01277) Third Amended Complaint, Motion for Appointment of | 0 | 0 |
| E-FILE SUBMISISONS | 04/05/2023 | E-file, 65 pages, Civil Rights Complaint, Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 03/29/2023 | Rec'd NEF Doc #23 (cv-01277) Order | 0 | 0 |
| E-FILE SUBMISISONS | 03/07/2023 | Rec'd NEF Doc #22 (cv-01277) Motion to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 03/06/2023 | E-file, 5 pages, Motion for Leave to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 03/06/2023 | Rec'd NDA Doc #3 (23-70008) Motion for Leave to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 03/02/2023 | E-file, 57 pages, (Ninth) Motion for Leave to Amend 2nd Supplement | 0 | 0 |
| E-FILE SUBMISISONS | 02/21/2023 | Rec'd NDA Doc #2 (23-70008) Motion for Leave to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 02/15/2023 | E-file, 44 pages (Ninth) Motion for Leave to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 02/09/2023 | Rec'd NEF Doc #21 (cv-01277) Motion to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 02/08/2023 | E-file, 5 pages, Motion to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 01/25/2023 | E-file, (Ninth) 61 pages, Petition for Writ of Habeas Corpus | 0 | 0 |
| E-FILE SUBMISISONS | 01/25/2023 | Rec'd NEF Doc #20 (cv-01277) Motion to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 01/23/2023 | E-file, (Ninth) 2 pages, Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 01/23/2023 | E-file, 4 pages, Motion for Leave to Amend | 0 | 0 |
| E-FILE SUBMISISONS | 01/23/2023 | E-file, 2 pages (Ninth) Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 12/14/2022 | Rec'd NEF Doc #18,19 (cv-01277) Motion for Summary Judgment, Second Amended Co | 0 | 0 |
| E-FILE SUBMISISONS | 12/13/2022 | E-file, 20 pages, Civil Rights Complaint, Motion for Appointment of Counsel | 0 | 0 |
| E-FILE SUBMISISONS | 12/12/2022 | E-file, 18 pages, Plaintiff's Motion for Summary Judgment | 0 | 0 |
| E-FILE SUBMISISONS | 12/08/2022 | Rec'd NEF Doc #17 (cv-01277) Order | 0 | 0 |
| E-FILE SUBMISISONS | 10/20/2022 | Rec'd NEF Doc #15,16 (cv-01277) Motion, First Amended Complaint | 0 | 0 |
| E-FILE SUBMISISONS | 10/18/2022 | E-file, 70 pages Amended Complaint, Civil Rights Complaint | 0 | 0 |
| E-FILE SUBMISISONS | 10/05/2022 | Rec'd NEF Doc #12,13,14 (cv-01277) Order, Affidavit | 0 | 0 |
| E-FILE SUBMISISONS | 09/01/2022 | Rec'd NEF Doc #9,10,11 (cv-01277) Motion, Lodged, Affidavit/ Prison Trust Account | 0 | 0 |
| E-FILE SUBMISISONS | 08/30/2022 | E-file, 9 pages Affidavit, Motion | 0 | 0 |
| E-FILE SUBMISISONS | 08/04/2022 | Rec'd NEF Doc #1,2,3,4,5,6,7,8 (cv-01277) Civil Rights Complaint, Motion, Notices | 0 | 0 |
| E-FILE SUBMISISONS | 07/28/2022 | E-file, 8 pages Motion to Include Exhibits | 0 | 0 |
| E-FILE SUBMISISONS | 07/25/2022 | E-file, 57 pages Civil Rights Complaint, Order, Motion | 0 | 0 |
| E-FILE SUBMISISONS | 09/29/2021 | Rec'd NDA Doc #45 (14-15883) | 0 | 0 |
| E-FILE SUBMISISONS | 09/28/2021 | E-file, 4 pages 14-15883 Notice of Correction | 0 | 0 |
| E-FILE SUBMISISONS | 09/21/2021 | Rec'd NDA Doc #44 (14-15883) | 0 | 0 |
| E-FILE SUBMISISONS | 09/21/2021 | Rec'd NDA Doc #17 (21-15470) | 0 | 0 |
| E-FILE SUBMISISONS | 09/21/2021 | Rec'd NDA Doc #9, 10, 11 (21-16486) | 0 | 0 |
| E-FILE SUBMISISONS | 09/15/2021 | E-file, 133 &18 pages Petition | 0 | 0 |
| E-FILE SUBMISISONS | 10/19/2020 | Approved - Rec'd 10-19-20 | 0 | 0 |
| E-FILE SUBMISISONS | 10/19/2020 | Approved - Rec'd 10-19-20 | 0 | 0 |
| E-FILE SUBMISISONS | 05/11/2020 | Rec'd NDA Doc #43 (14-15883) | 0 | 0 |
| E-FILE SUBMISISONS | 05/01/2020 | Rec'd NDA Doc #42 (14-05883) | 0 | 0 |
| E-FILE SUBMISISONS | 04/29/2020 | E-file, 3 pages (Ninth Cir) | 0 | 0 |
| E-FILE SUBMISISONS | 04/21/2020 | Rec'd NDA Doc #41 (14-15883) | 0 | 0 |
| E-FILE SUBMISISONS | 04/15/2020 | E-file, 48 pages | 0 | 0 |
| E-FILE SUBMISISONS | 04/03/2020 | Rec'd NEF Doc #40 (14-15883) | 0 | 0 |
| E-FILE SUBMISISONS | 04/02/2020 | E-file, 62 pages | 0 | 0 |
| E-FILE SUBMISISONS | 01/26/2018 | Rec'd NEF Document #30, 31 | 0 | 0 |

ATTACHMENT - 1

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 18 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GEARY WAYNE WALTON, | No. 23-91 |
| Applicant, | |
| | ORDER |
| v. | |
| JAMES KIMBLE, Warden, | |
| Respondent. | |

Before:    BENNETT, MILLER, and VANDYKE, Circuit Judges.

The motions to appoint counsel (Docket Entry Nos. 1, 4, and 5) are

denied.

The application for authorization to file a second or successive 28 U.S.C.

§ 2254 habeas corpus petition in the district court is denied.  The applicant has

not made a prima facie showing under 28 U.S.C. § 2244(b)(2) that:

> (A)  the claim relies on a new rule of constitutional law, made retroactive
> to cases on collateral review by the Supreme Court, that was previously
> unavailable; or
>
> (B)(i)  the factual predicate for the claim could not have been discovered
> previously through the exercise of due diligence; and (ii) the facts
> underlying the claim, if proven and viewed in light of the evidence as a
> whole, would be sufficient to establish by clear and convincing evidence
> that, but for constitutional error, no reasonable factfinder would have
> found the applicant guilty of the underlying offense.

The applicant has filed, at Docket Entry No. 6, a Complaint alleging civil

rights violations under 42 U.S.C. § 1983 and, at Docket Entry No. 7, a "Motion

for First Leave to Amend and for Compulsory Joinder in Civil Rights

Complaint." We do not consider these filings because the instant application is

not the proper vehicle in which to pursue claims alleging a deprivation of civil

rights.

Any pending motions are denied as moot.

No further filings will be entertained in this case.

**DENIED.**

 Gmail

**EYMAN MEADOWS LIBRARY - ADC <eym.meadows.library@azadc.gov>**

## 23-70008 Geary Walton v. Charles Ryan "Dispositive Order Filed"

1 message

**ca9_ecfnoticing@ca9.uscourts.gov** <ca9_ecfnoticing@ca9.uscourts.gov>

To: eym.meadows.library@azcorrections.gov

Thu, May 18, 2023 at 11:03 AM

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

<strong>United States Court of Appeals for the Ninth Circuit</strong>

**Notice of Docket Activity**

The following transaction was entered on 05/18/2023 at 11:02:35 AM Pacific Daylight Time and filed on 05/18/2023

|   |   |
|---|---|
| **Case Name:** | Geary Walton v. Charles Ryan |
| **Case Number:** | 23-70008 |
| **Document(s):** | Document(s) |

**Docket Text:**
Filed order (MARK J. BENNETT, ERIC D. MILLER and LAWRENCE VANDYKE): The motion for appointment of counsel (Docket Entry No. [4]) is denied. Geary Wayne Walton has filed a 28 U.S.C. § 2254 habeas corpus petition, which challenges Walton's 1988 convictions for sexual conduct with a minor under 15, public sexual indecency, and attempt to commit sexual abuse in Maricopa County Superior Court, case no. CR 87-09953. An application for a writ of habeas corpus must be made to the district court. See 28 U.S.C. § 2241(b); Fed. R. App. P. 22(a). If a habeas petition is filed in the court of appeals, "the application must be transferred to the appropriate district court." Fed. R. App. P. 22(a); see also 28 U.S.C. §§ 1631, 2241(b). We, however, will not transfer the § 2254 petition to the district court because Walton challenged these convictions in a § 2254 petition in the United States District Court for the District of Arizona case number 2:95-cv-01606-EHC, and the district court adjudicated the petition on the merits. Walton, therefore, must first obtain authorization from this court to file a second or successive § 2254 petition, see 28 U.S.C. § 2244(b)(3)(A), and he has not done so. Indeed, in case no. 23-91, we have denied Walton's application to file a second or successive petition, in which Walton appears to raise similar claims. We will not consider the merits of Walton's § 2254 petition. All other pending requests and motions, including Walton's motions for leave to amend, are denied as moot. No further filings will be entertained. The Clerk will close this original action. [12718297] (AF)

**Notice will be electronically mailed to:**

AZ Eyman Librarian: az.eyman.complex@azcorrections.gov, eym.cook.library@azcorrections.gov, eym.meadows.library@azcorrections.gov, eym.rynning.library@azcorrections.gov, eym.browning.library@azcorrections.gov, eym.smu1.library@azcorrections.gov

**Case participants listed below will not receive this electronic notice:**

Geary Wayne Walton

The following document(s) are associated with this transaction:
**Document Description:** Main Document
**Original Filename:** 23-70008 Proposed Order.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1106763461 [Date=05/18/2023] [FileNumber=12718297-0] [

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 18 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GEARY WAYNE WALTON,

Petitioner,

v.

CHARLES RYAN,

Respondent.

No. 23-70008

District of Arizona,
Phoenix

ORDER

Before:    BENNETT, MILLER, and VANDYKE, Circuit Judges.

The motion for appointment of counsel (Docket Entry No. 4) is denied.

Geary Wayne Walton has filed a 28 U.S.C. § 2254 habeas corpus petition,

which challenges Walton's 1988 convictions for sexual conduct with a minor

under 15, public sexual indecency, and attempt to commit sexual abuse in

Maricopa County Superior Court, case no. CR 87-09953.

An application for a writ of habeas corpus must be made to the district court.

*See* 28 U.S.C. § 2241(b); Fed. R. App. P. 22(a).  If a habeas petition is filed in the

court of appeals, "the application must be transferred to the appropriate district

court." Fed. R. App. P. 22(a); *see also* 28 U.S.C. §§ 1631, 2241(b).  We, however,

will not transfer the § 2254 petition to the district court because Walton challenged

these convictions in a § 2254 petition in the United States District Court for the

District of Arizona case number 2:95-cv-01606-EHC, and the district court

adjudicated the petition on the merits.  Walton, therefore, must first obtain

authorization from this court to file a second or successive § 2254 petition, *see* 28

U.S.C. § 2244(b)(3)(A), and he has not done so.  Indeed, in case no. 23-91, we

have denied Walton's application to file a second or successive petition, in which

Walton appears to raise similar claims.

   We will not consider the merits of Walton's § 2254 petition.

   All other pending requests and motions, including Walton's motions for

leave to amend, are denied as moot.

   No further filings will be entertained.

   The Clerk will close this original action.

ATTACHMENT-2

SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-22-0165-PR |
| Respondent, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 21-0594 PRPC |
| GEARY WAYNE WALTON, | ) | |
| | ) | Maricopa County |
| Petitioner. | ) | Superior Court |
| | ) | Nos.CR1987-009953 |
| | ) | CR1987-010264 |
| | ) | |
| | ) | **FILED: 1/06/2023** |

### O R D E R

On June 28, 2022, Petitioner Geary Wayne Walton filed his
fourteenth "Petition for Review" in this Court. While this Court's
consideration of Petitioner's petition for review was still pending,
Petitioner has filed four additional 'notices' and 'petitions' with
the Clerk of Court. First, on July 18, 2022, Petition filed a "Notice
of Correction." Second, on August 11, 2022, Petitioner filed a
"Second Notice of Correction." Third, on August 22, 2022, Petitioner
filed a "Petition for Evidentiary Hearing." Fourth, on September 1,
2022, Petitioner filed a "Petition for Own Recognizance Release After
Conviction of Right."

Petitioner has filed no fewer than five petitions either for
special action or for review in this Court in the last five years—
three in the last twenty-two months—each requiring time and consuming
resources for review by the Court. Petitioner has similarly filed
twenty-five post-conviction relief petitions in the superior court,

Arizona Supreme Court No. CR-22-0165-PR
Page 2 of 6

seven petitions for special action in the court of appeals, four

petitions for review of special action decisions of the court of

appeals in this Court, twenty petitions for review in the court of

appeals, and two habeas corpus matters in this Court. As the court of

appeals noted in 2016:

> Most of Walton's claims have been litigated multiple times
> and are precluded. Preclusion is designed to "require a
> defendant to raise all known claims for relief in a single
> petition," *State v. Petty*, 225 Ariz. 369, 373 ¶ 11, (App.
> 2010) (citation and internal quotation marks omitted), and
> thereby "prevent endless or nearly endless reviews of the
> same case in the same trial court." *Stewart v. Smith*, 202
> Ariz. 446, 450 ¶ 11.

*State v. Walton,* 2017 WL 2875644, n. 1 (App. July 6, 2017) (Mem.

Decision) (parallel citations omitted).

Petitioner filed this matter, his October 25, 2019, "Petition

for Writ of Habeas Corpus" (treated as his twenty-fifth PCR) in

superior court and was afforded appointed counsel. Counsel filed a

Notice of Completion of Post-Conviction Review advising the superior

court that counsel was unable to discern any colorable claims for

post-conviction relief raised in Walton's Petition for a Writ of

Habeas Corpus. *See* Notice of Completion of Post-Conviction Review by

Counsel, dated January 8, 2021. Replacement counsel was then

appointed April 15, 2021, "solely for the purpose of assisting

Petitioner with supplementing his pending petition." In an April 15,

2021 minute entry, the superior court found that although "the issues

raised in the pending Petition for a Writ of Habeas Corpus (25th PCR

proceeding) filed on October 25, 2019, are precluded or otherwise are

not colorable," the court granted a continuance for petitioner to further supplement his habeas petition to address his contention "that he had mental health and/or medical issues at the time the crimes were committed." Petitioner filed numerous pleadings and motions through October 18, 2021. The superior court found that the arguments were precluded and meritless. Maricopa Cnty. Sup. Ct. Minute Entry dated November 15, 2021. The court of appeals agreed. We do as well.

The Court of Appeals has previously held that Arizona courts have inherent authority to curtail a vexatious litigant's ability to initiate additional lawsuits. *See Madison v. Groseth*, 230 Ariz. 8, 14 ¶ 17 (App. 2012) (citing *Acker v. CSO Chevira,* 188 Ariz. 252, 254, 934 P.2d 816, 818 (App. 1997) (defining a court's inherent authority as "such powers as are necessary to the ordinary and efficient exercise of jurisdiction"), and *De Long v. Hennessey,* 912 F.2d 1144, 1147 (9th Cir. 1990) (recognizing strong precedent establishing inherent authority of federal courts "to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances). As the court of appeals observed:

> In *De Long v. Hennessey,* the Ninth Circuit set forth principles for courts to observe when ordering pre-filing restrictions: (1) to satisfy due process, the litigant must be afforded notice and an opportunity to oppose the order, (2) the court must create an adequate record for appellate review that includes a listing of all cases and motions leading the court to enter the order, (3) the court must make " 'substantive findings as to the frivolous or harassing nature of the litigant's actions,' " and (4) the order "must be narrowly tailored to closely fit the

Arizona Supreme Court No. CR-22-0165-PR
Page 4 of 6

> specific vice encountered." *Id.* at 1147-48 (citation omitted). We agree adherence to these principles is appropriate to ensure that a litigant's access to courts is not inappropriately infringed upon, and we therefore adopt them.

*Madison v. Groseth*, 230 Ariz. 8, 14 ¶ 18 (App. 2012). The court also

indicated:

> In applying the latter two principles relating to identifying a vexatious litigant and fashioning an appropriate remedy, the Ninth Circuit has held a court can derive guidance from considering the following factors: (1) the litigant's history of litigation and the nature of prior lawsuits, (2) the litigant's motive in filing new lawsuits, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to others or unduly burdened the court, and (5) whether different sanctions would adequately protect other parties and the court. *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1057-58 (9th Cir.2007) (citing *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986)).

*Id., 230 Ariz. at 14* n.9. The court also observed, however:

> In sum, a vexatious litigant order must rest on more than a recitation of the number of previously filed lawsuits. *De Long,* 912 F.2d at 1148; see also *Moy v. United States,* 906 F.2d 467, 470 (9th Cir. 1990) ("[A vexatious litigant] injunction cannot issue merely upon a showing of litigiousness. The plaintiff's claims must not only be numerous, but also be patently without merit."); *In re Powell,* 851 F.2d 427, 431 (D.C. Cir. 1988) ("Overall, the district court should look to both the number and content of the filings as indicia of frivolousness and harassment.").

*Madison*, 230 Ariz. at 14-15 ¶ 21.

Petitioner's continuing petitions, motions, notices, and the

like fail to comply with court rules and continue to raise

undeveloped, meritless, and precluded arguments. As recognized in

*Madison v. Groseth,* in such circumstances the courts may discourage

Arizona Supreme Court No. CR-22-0165-PR
Page 5 of 6

vexatious litigation—including that initiated by *pro per* criminal defendants—by finding that a defendant is a vexatious litigant and determining whether to issue an appropriate pre-filing limitations order.

Therefore, upon consideration by the full court, and **GOOD CAUSE APPEARING,**

**IT IS ORDERED** denying review of Petitioner's current petition for review in the above captioned matter.

**IT IS FURTHER ORDERED** that Petitioner's "Petition for Evidentiary Hearing" and "Petition for Own Recognizance Release After Conviction of Right" are denied.

**IT IS FURTHER ORDERED** because Petitioner's "Notice of Correction" and "Second Notice of Correction" request no relief, that both notices are denied as moot.

**IT IS FURTHER ORDERED** that upon the initiation of future proceedings, the superior court may in its discretion initiate proceedings to place Petitioner on notice of its intention to declare petitioner a vexatious litigant and its intention to enter an appropriate order limiting future proceedings.

DATED this 6th day of January, 2023.

                                    /s/
                              ANN A. SCOTT TIMMER
                              Vice Chief Justice

     Chief Justice Brutinel and Justice Montgomery are recused and did not participate in the determination of this matter.

Arizona Supreme Court No. CR-22-0165-PR
Page 6 of 6


TO:
Alice Jones
Daniel Strange
Geary Wayne Walton, ADOC 037353, Arizona State Prison, Florence –
    Eyman Complex-Cook Unit
Hon. Jennifer E. Green
Hon. Justin Beresky
Amy M Wood

IN THE

# COURT OF APPEALS

STATE OF ARIZONA

DIVISION ONE



```
DIVISION ONE
FILED: 2/09/23
AMY M. WOOD,
CLERK
BY: JT
```

STATE OF ARIZONA,                    )  Court of Appeals
                                     )  Division One
                    Respondent,      )  No. 1 CA-CR 21-0594 PRPC
                                     )
            v.                       )  Maricopa County
                                     )  Superior Court
GEARY WAYNE WALTON,                  )  No. CR1987-009953
                                     )  No. CR1987-010264
                    Petitioner.      )
_____  )

### MANDATE

TO: The Maricopa County Superior Court and the Justin Beresky, Judge, in relation to Cause No. CR1987-009953 AND CR1987-010264.

This cause was brought before Division One of the Court of Appeals in the manner prescribed by law.  This Court rendered its MEMORANDUM DECISION and caused the same to be filed on May 31, 2022.

   The time for the filing of a motion for reconsideration has expired and no motion was filed.  A petition for review was filed. By order, dated January 6, 2023, the Arizona Supreme Court denied the petition for review. Arizona Supreme Court No. CR-22-0165-PR.

   NOW, THEREFORE, YOU ARE COMMANDED to conduct such proceedings as required to comply with the MEMORANDUM DECISION of this court; a copy of which is attached hereto.

   I, Amy M. Wood, Clerk of the Court of Appeals, Division One, hereby certify the attachment to be a full and accurate copy of the MEMORANDUM DECISION filed in this cause on May 31, 2022.

IN WITNESS WHEREOF, I hereunto set my hand and affix the official seal of the Arizona Court of Appeals, Division One, on February 9, 2023.



                              AMY M. WOOD, CLERK


                       By_____jt_____
                              Deputy Clerk





DIVISION ONE
FILED: 2/09/23
AMY M. WOOD,
CLERK
BY: JT

AMY M. WOOD
CLERK OF THE COURT

**Court of Appeals**
STATE OF ARIZONA
DIVISION ONE
STATE COURTS BUILDING
1501 WEST WASHINGTON STREET
PHOENIX, ARIZONA 85007

Phone: (602) 452-6700
Fax:    (602) 452-3226

February 9, 2023

Jeff Fine, Clerk
Maricopa County Superior Court
201 West Jefferson Street
Phoenix, Arizona  85003

Hon. Fine:

RE:  1 CA-CR 21-0594 PRPC

STATE v. WALTON
Maricopa County Superior Court
CR1987-009953 AND CR1987-010264

The following are attached in the above entitled and numbered cause:

Original MANDATE
Copy of MEMORANDUM DECISION

The following items are not available for electronic transmittal and will
be physically transmitted to your Court.

Physical Exhibits: Hearing Date: 09/21/1988 List # 1 2 3 4 5 6 7 8
9 10 11 12 13 14 15 in manila envelope; Hearing Date: 09/26/1988 List
# 1 2 3 4 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 in manila envelope;
Hearing Date: 10/17/1988 List # 1 2 3 in manila envelope

If digital exhibits were submitted through the Arizona digital exhibit
portal in this case, access to those exhibits by the Court of Appeals will
be removed by the Superior Court pursuant to ARCAP Rule 24(c).

AMY M. WOOD, CLERK

By_____jt_____
Deputy Clerk

A copy of the foregoing
was sent to:

Daniel Strange
Geary Wayne Walton, ADOC 037353 (mailed)
Hon Justin Beresky
Arizona Department of Corrections

(Transmitted to DPS through separate distribution.)

NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent,*

*v.*

GEARY WAYNE WALTON, *Petitioner.*

No. 1 CA-CR 21-0594 PRPC
FILED 5-31-2022

Petition for Review from the Superior Court in Maricopa County
Nos. CR1987-009953, CR1987-010264
The Honorable Justin Beresky, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Daniel Strange
*Counsel for Respondent*

Geary Wayne Walton, Florence
*Petitioner*

STATE v. WALTON
Decision of the Court

---

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey, Judge Peter B. Swann and Judge D. Steven Williams delivered the decision of the Court.

---

**PER CURIAM:**

**¶1**      Petitioner Geary Wayne Walton seeks review of the superior court's order denying his petition for post-conviction relief. This is petitioner's twenty-fifth successive petition.

**¶2**      Absent an abuse of discretion or error of law, this court will not disturb a superior court's ruling on a petition for post-conviction relief. *State v. Gutierrez*, 229 Ariz. 573, 577, ¶ 19, 278 P.3d 1276, 1280 (2012). It is petitioner's burden to show that the superior court abused its discretion by denying the petition for post-conviction relief. *See State v. Poblete*, 227 Ariz. 537, ¶ 1, 260 P.3d 1102, 1103 (App. 2011) (petitioner has burden of establishing abuse of discretion on review).

**¶3**      We have reviewed the record in this matter, the superior court's order denying the petition for post-conviction relief, and the petition for review. We find that petitioner has not established an abuse of discretion.

**¶4**      We grant review and deny relief.



AMY M. WOOD • Clerk of the Court
FILED:    AA

Clerk of the Superior Court
*** Electronically Filed ***
01/12/2023 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 1987-009953                                      01/11/2023

                                          CLERK OF THE COURT
HONORABLE KEVIN B. WEIN                            A. Rowe
                                                  Deputy


STATE OF ARIZONA                    KRISTA WOOD

v.

GEARY WAYNE WALTON (A)              GEARY WAYNE WALTON
                                    #037353, ASPC, EYMAN COOK
                                    P.O. BOX 3200
                                    FLORENCE AZ 85132

                                    COURT ADMIN-CRIMINAL-PCR
                                    JUDGE WEIN



**NEW COUNSEL DENIED**
**SUPPLEMENTATION OF REJECTED PLEADING DENIED**
**EVIDENTIARY HEARING DENIED**

        The Court has received and considered Defendant's "Motion For Evidentiary Hearing On
Notice Of Filing Supplemental Exhibits In Support Of Walton's Habeas Petition" filed on
December 9, 2022, "Motion For New Counsel Appointment" filed on December 15, 2022, and
"Notice" filed on December 29, 2022. The Court found Defendant's habeas claims precluded by
order filed on April 16, 2021, and likewise denied a supplemental filing by order filed on
November 15, 2021. He has no current Rule 32 proceeding. No good cause appearing,

        IT IS ORDERED denying the Motions.

ATTACHMENT 3

NEWLY·DISCOVERED
EVIDENCE



**SimonMed** *See Tomorrow Today·*

**SimonMed AZ Greenfield**
1425 S Greenfield Road Bldg 2, Suite 114
Mesa, AZ 85206
Phone: 480-324-8033

## DIAGNOSTIC IMAGING REPORT

Patient:  Walton, Geary Sex :M DOB: 01/11/1959 Age: 64
Diag. Imaging#: 8812315

Status:
Referring Physician: PAMELA ANN OLMSTEAD
CC Physician:

EXAM #36762899 - 07/13/2023 9:25 AM -CT HEAD WITH AND WITHOUT CONTRAST

INDICATION: Headache. Gunshot wound. Chronic migraine headaches. Greatest in the frontal region. Gunshot wound in the 1970s..

COMPARISON: None.

TECHNIQUE: Contiguous axial images of the head were obtained pre and post intravenous contrast administration. CT scan done according to ALARA (As Low As Reasonably Achievable).
Venipuncture was performed and IV access was obtained. Prior to contrast administration, blood was drawn from the IV port for I-STAT analysis to monitor renal function due to the patient's kidney disease or diabetes requiring medication and absence of recent lab studies. I-STAT: Cr: 1.0 mg/dL; calculated GFR 75 mL/min.
Prior known CT or cardiac nuclear medicine studies performed in the last 12 months: 0

RADIATION DOSE: CTDI volume 56.57 mGy; total DLP 1019.63 x 2 mGy-cm.

CONTRAST: 100 mL of Omnipaque (350 mgI/mL) single-use vial was administered IV with 0 mL discarded.

FINDINGS:

Brain: Multiple bullet fragments with significant beam hardening artifact in the right frontal lobe. Mild encephalomalacia in the right frontal lobe.
There is no acute infarction, intracranial hemorrhage or intracranial mass lesion. No focus of cytotoxic edema. No mass effect or midline shift. No other significant volume loss or white matter hypodensities. The cerebellar tonsils are in normal position.

Ventricles/extra-axial spaces: The ventricles, sulci, and cisterns are within normal limits in size and configuration. No extra-axial fluid collection or acute hemorrhage.

Globes/orbits: Multiple bullet fragments in the right orbit particularly in the medial post septal soft tissues and surrounding the right lateral orbital wall. There is a right preseptal bullet fragment. Remote right medial orbital wall/lamina papyracea and inferior orbital wall fractures with herniation of fat into the right maxillary sinus. The globes are intact without hypodense retinal hemorrhage. There is no periorbital hematoma. No stranding is identified.

Paranasal sinuses: Bullet fragments are seen in the right maxillary sinus with a remote right anterior maxillary sinus wall fracture. No fluid levels or acute or chronic sinusitis.

Nasal septum: Minimally sigmoid shaped with 2 mm left nasal septal spur.

Temporomandibular joints: No significant degenerative change.

# SimonMed

*See Tomorrow Today*

**SimonMed AZ Greenfield**
1425 S Greenfield Road Bldg 2, Suite 114
Mesa, AZ 85206
Phone: 480-324-8033

## DIAGNOSTIC IMAGING REPORT

| | |
|---|---|
| Patient: | Walton, Geary Sex :M DOB: 01/11/1959 Age: 64 |
| | Diag. Imaging#: 8812315 |

Status:
Referring Physician: PAMELA ANN OLMSTEAD
CC Physician:

### EXAM #36762899 - 07/13/2023 9:25 AM - CT HEAD WITH AND WITHOUT CONTRAST

Mastoid air cells: Normally aerated.

Vessels: No hyperdense vessels.

Calvarium: No acute fracture or lytic lesion.

Soft tissues: Multiple bullet fragments in the right frontal and temporal scalp soft tissues. No soft tissue fluid collection. Mild suboccipital soft tissue edema.

Postcontrast head: No abnormal intracranial enhancement. The dural venous sinuses are grossly patent.

IMPRESSION:

1. Multiple bullet fragments with significant beam hardening artifact in the right frontal lobe. Mild encephalomalacia in the right frontal lobe.

2. No acute hemorrhage, mass, or midline shift. No abnormal intracranial enhancement.

3. Multiple bullet fragments in the right orbit with remote right lamina papyracea and inferior orbital wall fractures. These orbital bullet fragments preclude MRI.

4. Bullet fragments in the right maxillary sinus with remote right inferior maxillary sinus wall fracture. No acute or chronic sinusitis.

Anne Marie McLellan, DO
CAQ Neuroradiology
CAQ Pediatric Radiology

dd:07/18/2023 5:17 PM

Reported by: Marie Mclellan, Anne DO
Electronically signed by: Marie McLellan, Anne

Thank you for your kind referral. If you require further assistance, please contact our Radiologist Hotline at 855-RAD-TALK(855-723-8255).

**Progress Notes**

**Patient:** WALTON, GEARY
**Account Number:** 30824
**DOB:** 01/11/1959  **Age:** 64 Y  **Sex:** Male
**Phone:** 520-000-0000
**Address:** 4767 E BUTTE AVE, Florence, AZ-85132
**Pcp:** ATTN CLINICAL COORDINATOR FLORENCE CORRECTIONAL

**Provider:** SHINY THOMAS, NP
**Date:** 08/07/2023

RECEIVED
AUG 0 8 2022
BY: ......................

## Subjective:

**Chief Complaints:**
1. New consult for Hypertension, and abnormal ekg.

**HPI:**
constitutional:
Mr. Walton is a 64-year-old male. He is a correctional facility inmate. He has a past medical history of type 2 diabetes, hypertension, arrhythmia and gunshot injury and migraines. The patient reports he has been experiencing palpitations and he feels like his heart is stopping. Patient has dizziness and near syncopal episodes in the past. EKG today in the office showed sinus bradycardia. He reports he has exertional dyspnea. Blood pressure is controlled on current medications. He has a history of hepatitis C and cirrhosis. He denies any lower extremity symptoms. Patient is on propranolol for possible migraine headaches. During my interview the patient denies any chest pain, shortness of breath or palpitations.

**ROS:**
14 point system reviewed and otherwise negative except those mentioned in the HPI.
**Medical History:** Hypertension, Arrhythmia, Cirrhosis or fibrosis, Diabetes type 2.
**Surgical History:** Denies Past Surgical History.
**Hospitalization/Major Diagnostic Procedure:** Denies Past Hospitalization.
**Family History:** Non-Contributory.

**Medications:** Taking Topiramate 100 MG Tablet 1 tablet Orally Once a day, Taking Propranolol HCl 10 MG Tablet 1 tablet Orally Once a day, Taking Prazosin HCl 2 MG Capsule 1 capsule at bedtime Orally Once a day, Taking PARoxetine HCl 40 MG Tablet 1 tablet in the morning Orally Once a day, Taking PARoxetine HCl 20 MG Tablet 1 tablet in the morning Orally Once a day, Taking Omeprazole 20 MG Capsule Delayed Release 1 capsule 30 minutes before morning meal Orally Once a day, Taking metFORMIN HCl 1000 MG Tablet 1 tablet with a meal Orally Once a day, Taking Losartan Potassium 25 MG Tablet 1 tablet Orally Once a day, Taking Imitrex 50 MG Tablet 1 tablet at least 2 hours between doses as needed Orally Twice a day, Taking Ibuprofen 600 MG Tablet 1 tablet with food or milk as needed Orally Three times a day, Medication List reviewed and reconciled with the patient
**Allergies:** Aspirin.

## Objective:

**Vitals:** BP: L 150/84 R 143/86, HR: 51 /min, Oxygen sat %: 99 %, RR: 17 /min, Ht: 68 in, Wt: 167 lbs, BMI: 25.39 Index, Temp: 97.4 F, Ht-cm: 172.72 cm, Wt-kg: 75.75 kg.
**Examination:**
General Examination:
GENERAL APPEARANCE: in no acute distress, well developed, well nourished.
HEAD: normocephalic, atraumatic.
EYES: pupils equal, round, reactive to light and accommodation.
EARS: normal.
ORAL CAVITY: mucosa moist.
THROAT: clear.
NECK/THYROID: neck supple, full range of motion, no cervical lymphadenopathy.
SKIN: no suspicious lesions, warm and dry.
HEART: no murmurs, regular rate and rhythm, S1, S2 normal.
LUNGS: clear to auscultation bilaterally.
ABDOMEN: normal, bowel sounds present, soft, nontender, nondistended.
EXTREMITIES no clubbing, cyanosis, or edema.
NEUROLOGIC: nonfocal, motor strength normal upper and lower extremities, sensory exam intact.

## Assessment:

**Assessment:**

1. Palpitations - R00.2 (Primary)
2. Abnormal EKG - R94.31
3. Essential hypertension - I10
4. BMI 25.0-25.9,adult - Z68.25
5. Migraine aura without headache (migraine equivalents) - G43.109

## Plan:

**1. Palpitations**
Notes: This patient has a history of arrhythmia. He reports he has arrhythmia for the past 3 years. He was asymptomatic on this time however for the past couple of months he is experiencing palpitations and he feels like the heart is stopping. He has dizziness and generalized fatigue. EKG today in the office shows sinus bradycardia. The patient is recommended to undergo a loop recorder placement to rule out malignant arrhythmias.

**2. Abnormal EKG**
Notes: The patient has a history of arrhythmia. He may have sick sinus syndrome. EKG today and due for showed sinus bradycardia. The patient has multiple risk factors for coronary artery disease. He is recommended to undergo a myocardial perfusion scan and echocardiogram. Patient has chest tightness and exertional dyspnea.

**3. BMI 25.0-25.9,adult**
Notes: Emphasized the importance of diet and exercise. BMI was discussed with the patient.

**4. Migraine aura without headache (migraine equivalents)**
Notes: The patient has a history of gunshot injury and he reports the bullets fragments are in his skull. Patient has migraines.

**Procedure Codes:** 93000 -ELECTROCARDIOGRAM, COMPLETE, Modifiers: 59

**Preventive Medicine:**
   YOUR PREVENTIVE WELLNESS PLAN: BMI, Height, and Weight: My BMI, height, and weight were taken on: 08/07/2023. Blood Pressure: My blood pressure was last taken on: 08/07/2023.
   Counseling: Care goal follow-up plan: BMI management provided Yes, Above Normal BMI Follow-up Giving encouragement to exercise, Nutrition/Dietary Counseling provided Yes.
   Screenings: TOBACCO USE SCREENING: The patient smoked: no tobacco products.

**Follow Up:** 4-6 weeks for echocardiogram, loop recorder placement, NST and consult to review testing

**Provider: SHINY THOMAS, NP**                                    **Date: 08/07/2023**

EXHIBIT· A

NewsBank InfoWeb

# America's Newspapers

NO PROSECUTION OF 60 IN PROSTITUTION STING
ROMLEY ASSISTANT ASSAILS DEPUTIES, UPSETTING ARPAIO
Arizona Republic, The (Phoenix, AZ)
June 16, 2004
Author: David J. Cieslak and Emily Bittner, The Arizona Republic
**Estimated printed pages: 3**

About 60 people arrested last year in a **prostitution sting** will not be criminally charged because Maricopa County sheriff's deputies used tactics including nudity and sexual contact in their undercover operations, county prosecutors announced Tuesday.

County prosecutors believe the two-month **sting**, which targeted **prostitution** suspects and men accused of soliciting sex for money, was botched by sheriff's officials who allowed undercover deputies and Sheriff's Posse members to remove their clothing and engage in sex acts on videotape.

"The credibility of the officers and the tactics they used are so abhorrent that we believe the likelihood of conviction has disappeared," Special Assistant County Attorney Barnett Lotstein said. "At no time did our office ever, explicitly or implicitly, sign off on anything relating to the conduct that they employed."

Sheriff Joe **Arpaio** pledged to forward the rejected cases to the U.S. Attorney's Office, hoping federal prosecutors will pursue criminal charges against the suspects.

In a hastily scheduled news conference, a visibly frustrated **Arpaio** defended his staffers, saying he believes they acted professionally and followed the law.

**Arpaio** hinted that politics played a role in Tuesday's decision to reject the cases but would not discuss a renewed strain on his relationship with Maricopa County Attorney Rick **Romley**.

"I do my job, politics or no politics, and I'm going to continue to do my job, politics or no politics," **Arpaio** said. "My main mission is to protect the public, protect the kids. We're going to continue to do our jobs."

The cases rejected by county prosecutors stem from arrests made from September to November last year during two investigations dubbed Operations House Call and Destiny. Deputies targeted 33 homes and 10 massage parlors in House Call, while Destiny was a **sting** operation out of three Valley hotels.

Among the suspects arrested were a local radio station's sales manager, a state corrections officer and a woman who billed herself as a former Miss Canada. Some of the women were tracked down after sheriff's investigators found suggestive ads in local publications.

The operations, which drew national attention, were criticized at the time by some community members, who believed devoting about 400 officers to such a low-level crime was a waste of resources.

But **Arpaio** remained defiant Tuesday. saying **prostitution** endangers public safety and spreads sexually transmitted diseases.

"What are we coming to?" **Arpaio** asked. "If you want **prostitution**, change the law, but don't go criticizing my officers who are trying to enforce the law under difficult circumstances."

Sheriff's Capt. Don Schneidmiller said county prosecutors took part in planning meetings and knew that deputies planned to remove clothing and possibly engage in "inadvertent" sexual touching.

Schneidmiller, who raised his voice several times while discussing Tuesday's developments, described the prosecutors' decision as "ridiculous" and accused the County Attorney's Office of misrepresenting his operation.

"I can't begin to tell you how offended I am by this," Schneidmiller said. "My guys were professional, they were responsible. I view this ... as a slap in the face, and I know my guys do, too."

Lotstein insisted prosecutors were unaware of any plans for nudity and would not have condoned such tactics.

"We did not sign off on nudity," Lotstein said.

David Dusenbury, a retired deputy chief of police who has lectured and taught vice investigations in California, said authorities who engage in sexual contact have committed a crime.

"Oh, my. That's not acceptable," Dusenbury said. "You just have to back away and figure out another way to skin the cat."

If investigators had sexual contact with the women, "then what you have is vice officers actually engaged in **prostitution**," Dusenbury said. "Then you've committed a crime yourself."

Vice officers can make their cases in other ways than doing anything illegal, he said. Surveillance, questioning johns and having a known customer introduce the investigator are all widely acceptable ways of making **prostitution** collars, he said.

Dozens of the women arrested were unavailable for comment or didn't return messages on Tuesday.

One of the women had a message on her cellphone asking callers to tell her which ad prompted them to call.

Reach the reporter at david.cieslak@arizonarepublic.com or (602) 444-8208.

Edition: Final Chaser
Section: Front
Page: A1

Copyright (c) The Arizona Republic. All rights reserved. Reproduced with the permission of Gannett Co., Inc. by NewsBank, inc.
Record Number: pho53550421

# AFFIDAVIT

COMES NOW THE AFFIANT, BRICE E. BUEHLER, 212 E. Bethany Home Rd., Phoenix, Arizona, and states as follows:

The Affiant is an attorney admitted to practice in Arizona in 1971 under Arizona State Bar #002566. The Affiant is in good standing with said Bar Association.

Affiant was retained in June of 1977 by GARY WAYNE WALTON to represent him in the Superior Court of Maricopa County, Arizona, against charges of Lewd and Lascivious Acts, a felony, Cause #CR 97176.

Mr. Walton denied committing the criminal acts charged but was willing to plead no contest (Nolo Contendre) to said charges. Accordingly, a no contest plea was entered to Lewd and Lascivious Acts on June 23, 1977.

It was the understanding of the Affiant that Rule 410 of the Arizona Rules of Evidence precluded the use of Mr. Walton's no contest plea in any subsequent criminal charge brought against him. Mr. Walton relied on this fact in agreeing to plead no contest to the charges.

Further Affiant sayeth not.

Brice E. Buehler

Dated this 23rd day of March, 2015.

Subscribed and sworn to before me, Lori A Rangel, the 23rd day of March, 2015, by Brice E. Buehler.

My Commission Expires
7-21-2017

NOTARY PUBLIC
STATE OF ARIZONA
Pinal County
Lori A. Rangel
My Commission Expires July 21, 2017

EXHIBIT-B

1

**ZHIVAGO LAW PLLC**
Kerrie D. Zhivago, SBID# 106464

2

1934 E. Camelback Rd., Ste. 120-482
Phoenix, Arizona 85016

3

Telephone: (480) 612-3058
e-mail: zhivagolaw@gmail.com

4

5

Attorney for Petitioner

6

7

# IN THE SUPERIOR COURT OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

8

9

STATE OF ARIZONA,                    Case No.: 1987 -009953A

Plaintiff,

10

11

vs.

12

GEARY WAYNE WALTON
(dob: 1/11/1952),
Petitioner.

**NOTICE OF FILING
SUPPLEMENTAL EXHIBITS IN
SUPPORT OF WALTON'S** *HABEAS
PETITION (filed 10/25/2019)*

13

14

15

16

Petitioner, **GEARY WAYNE WALTON**, hereinafter "Walton," and by and through his

17

undersigned counsel and Zhivago Law, PLLC, hereby supplements his previously filed habeas

petition (10/25/2019) with exhibits substantiating that Walton suffered from PTSD and other

18

mental health/medical issues prior to and at the time of his crimes.

**OVERVIEW OF THE FACTS**[1]

19

20

In Maricopa County case numbers CR1987-009953 and CR 1987-010264 consolidated for

trial, a jury convicted Walton of attempted sexual abuse, public sexual indecency with a minor,

21

sexual conduct with a minor with one prior predicate felony and seven counts of sexual conduct

22

with a minor with two prior predicate felonies. The superior court sentenced Walton to consecutive

sentences of fifteen years imprisonment for attempted sexual abuse, six years of imprisonment for

23

public sexual indecency with a minor, thirty-five years of imprisonment for one count of sexual

24

25

---

[1] As taken from the Court of Appeals Memorandum Decision *State v. Walton, No. 1-CA-CR 14-0354* (*Ariz.App. June 30, 2016*).

SUPPLEMENTAL EXHIBITS IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

1  conduct with a minor and seven consecutive life sentences with a possibility of parole after thirty-

2  five years served in each sentence for the remaining counts of sexual conduct with a minor.

3      Walton appealed, filed 15 petitions for review and 25 petitions for post-conviction relief.
   This Court dismissed his previous PCR proceedings on September 5, 2019 finding that the claims

4  alleged in Walton's 24th PCR were precluded since they had all been previously adjudicated against

5  him in prior post-conviction proceedings—that *Crawford* was a significant change in the law, that

6  *Blakely* was a significant change in the law, that he was being held in custody after his sentence

7  expired, that a state expert committed perjury at trial, that newly-discovered evidence indicates that
   the Child Sexual Abuse Accommodation Syndrome should be scrutinized under *Frye*, that the

8  evidence at trial was insufficient and that certain evidence admitted at trial was inadmissible hearsay.

9  (ME 09/05/2019 pg. 2).

10      As to Walton's newly-discovered PTSD claim, the court ruled as follows:

11          Walton did not demonstrate by clear and convincing evidence there were
    newly discovered material facts to support his claim that he had PTSD at the time of

12      trial, thus warranting a reversal of his convictions or a reduction in his sentence. The
    only evidence provided by Defendant Walton was that he had PTSD in 2017 while

13      in prison. This diagnosis was based upon Defendant Walton's self-reported
    symptoms. No doctor has provided any opinion that Defendant Walton had PTSD

14      at the time the offenses were committed. Thus, Defendant Walton failed to raise a
    colorable claim of actual innocence by clear and convincing evidence that would be

15      sufficient to show that no reasonable fact-finder would have found him guilty of the
    offenses beyond a reasonable doubt.

16      (ME 09/05/2019 pg. 2)

17      Walton filed a Motion for Rehearing from his denial of his 24th PCR which this Court

18  denied; Walton had already filed a Petition for Writ of Habeas Corpus in the trial court on October

19  24, 2019 which was regarded as his 25th PCR proceeding. (ME 01/06/2020). His then appointed
   PCR counsel, Amy Bain, filed a Notice of Completion. 01/08/2021.

20      Walton's Petition for Writ of Habeas Corpus (his 25th PCR petition) raised multiple issues

21  including: newly-discovered evidence of a traumatic brain injury from multiple gunshot wounds to

22  the head in 1979, PTSD.... (see Petition for Writ of Habeas Corpus, filed 10/25/2019).

23      On April 15, 2021, this Court ordered in relevant part as follows:
        While the Court agrees with the State that the issues raised in the pending

24      Petition for a Writ of Habeas Corpus (25th PCR proceeding) filed on October 25,
    2019 are precluded or otherwise are not colorable for the reasons stated in the State's

25      Response to 15th Post-Conviction Relief Petition and Supplemental Motions filed
    March 30, 2021 the Court will permit Petitioner to have *one additional continuance* to
    further supplement his habeas petition frilled on October 25, 2019 regarding his

contention that he had mental health and/or medical issues at the time the crimes were committed.
(ME 04/15/2021, *italics* in original).

In accordance with this Court's orders, Counsel after reviewing voluminous medical records (some 3000 pages of documents), supplements Walton's Petition for Writ of Habeas Corpus as follows:

In November 1979, Walton did indeed sustain multiple gunshot wounds to the head and was treated at St. Joseph's Hospital and Maricopa County General[2]. "The patient was admitted to the ICU following discussion with neurosurgeon, Dr. Sontag. It was her determination that Walton had incurred no life threatening or neck injury and the next day Walton insisted he be discharged (against medical advice). Doctors had planned to perform an emergency eye surgery to "explore and remove foreign bodies." On November 6, 1979, Walton removed his IV and left the ICU; he was temporary restrained after he became violent and abusive to the staff. Eventually, Walton left without medications or future appointments.

In 1986, Dr. Richard Thompson, in correspondence to Dr. H.W. Dunford wrote in relevant part as follows:

> [Walton] has some hallucinations when he gets very sleepy and has run off the road on occasions.....On November 4, 1979, he was shot twice or three times in the right temple by a girlfriend while he lay sleeping. He was hospitalized and unconscious for two or three days and then awoke confused and has poor recall of events. He doesn't jnow when the seizures started exactly but he started having grand mal seizures without warning about twice a month thereafter. He was placed on Dilantin three a day and more recently in just the past few months...he was increased to four per day and the seizure frequencies have been reduced. ...He has injured himself on occasion...and has also bitten his tongue...
>
> It is my impression this patient has narcolepsy from childhood and it is inherited ...he also has a post-traumatic seizure disorder and still has one seizure a month which is unacceptable. I would recommend that blood levels be checked and if his Dilantin blood levels would permit it that he be increased....Mysoline and Phenobarbital probably would not work well because of the history of narcolepsy[3]...

On March 3, 1980, Walton was given a psychological evaluation that showed "evidence of substantial, generalized psychotic pathology, which tends to make his behavior bizarre and

---

[2] See Exhibit B
[3] See Exhibit A

SUPPLEMENTAL EXHIBITS IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

1  inappropriate." Anti-psychotic drugs were recommended but there is no indication he was ever

2  prescribed any medication.

3       Records from 11/1979 to 10/2014 were provided by the Department of Corrections mostly

4  in paper form; after 2014 the files were digitized. Many of the notes, though handwritten, were

5  nonetheless still legible and substantiate that Walton indeed suffered from PTSD prior to

6  committing the crimes for which he was ultimately convicted. Similarly, he complained of mental

7  health issues (that were only later diagnosed as PTSD)[4]. This information supports Walton's newly

8  discovered evidence claim that he suffered from PTSD and this information was not presented to

9  the trial court for consideration.

10       RESPECTFULLY SUBMITTED this 8th day of February 2022.

11  

12  *Kerrie D. Zhivago*
   KERRIE D. ZHIVAGO
   Attorney for Petitioner

13  

14  **ORIGINAL** of the foregoing e-filed
   this 8h day of February 2022, to:

15  Clerk of the Maricopa County Superior Court
   Phoenix, Arizona

16  

17  **COPIES MAILED** to:

18  Deputy County Attorney
   MARICOPA COUNTY ATTORNEY'S OFFICE

19  301 W. Jefferson, 2nd fl.
   Phoenix, Arizona 85003

20  

21  And MAILED to:

22  Mr. Geary Walton
   ADC# 037353

23  ASPC—Eyman Cook Unit
   P.O. Box 3200
   Florence, AZ 85032

24  

25  _____

[4] See Exhibit B, summary of medical records

SUPPLEMENTAL EXHIBITS IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

# EXHIBIT A

**NEUROLOGICAL CONSULTANTS, INC.**
RICHARD A. THOMPSON. M.D.
JAMES L. FREY. M.D.
KATHERN L. PLENGE. M.D.
LAWRENCE TEITEL, M.D.

NEUROLOGY
ELECTROENCEPHALOGRAPHY
ELECTROMYOGRAPHY

December 17, 1986

H. W. Dunford, D.O.
3306 W. Roosevelt #B
Phoenix, AZ 85009

RE: WALTON, Gary

Dear Doctor Dunford:

Gary Walton is a 27 year old under cover policeman who was seen today for evaluation of both narcolepsy and epilepsy. He has a family history of narcolepsy with his father and an uncle and a brother all having some degree of narcolepsy. He remembers being excessively sleepy for many years especially during his teenage years and since. In 1979 he was started on Ritalin which was partially effective at 20 mgs. 3 times a day. Basically that has been the medication which has been prescribed for him over the years. For a short while he was on Preludin 75 mgs. b.i.d. and felt that this was much more effective than Ritalin. He has episodes of sleep paralysis and he has had occasional cataplexy. Cataplexy can occur in this patient either with excitement of something funny or excitement of something frightening. He has some hallucinations when he gets very sleepy and he has run off the road on occasion. He has had no serious automobile accidents.

On November 4, 1979, he was shot twice or three times in the right temple by a girlfriend while he lay sleeping. He was hospitalized and unconscious for two or three days and then awoke confused and has poor recall of events. He doesn't know when the seizures started exactly but he started having grand mal seizures without warning about twice a month thereafter. He was placed on Dilantin three a day and more recently, in just the past few months apparently, he has been increased to four per day and the seizure frequency has been reduced to one per month. He has had injured himself on occasion. He has been incontinent on occasion and he has also bitten his tongue on occasion.

He has had no other significant neurologic symptoms. His past medical health has been satisfactory.

Neurologic examination reveals no focal signs. Station and gait are normal. There are no cerebellar signs. Motor power is normal and coordinated movements are performed well. Deep tendon reflexes are all present and symmetrically active. Plantar signs are flexor. There is no muscle atrophy or fasciculation. Sensory examination reveals intact pin prick, vibration and position sense. Cranial nerve examination reveals normal visual fields on a tangent screen. Ocular movements are full and there is no nystagmus. Optokinetic nystagmus is normal. Pupils are equal and reactive. Fundi are normal. There is no evidence of papilledema. Sense of hearing

H. W. Dunford, D.O.                          Page Two
December 17, 1986                     RE:  WALTON, Gary

is intact.  Sense of smell was not tested.  There is no weakness
of the face, tongue, or palate.  No bruit is heard over the
carotid arteries.

It is my impression this patient has narcolepsy from childhood
and it is inherited and he gives a good story for the disorder.
He either has it or knows a lot about it.  It is my impression,
however, that he has it and is not conning me.  Since he has had
better effect on Preludin I would suggest that he be put back on
Preludin 75 mgs. b.i.d. in place of Ritalin 20 mgs. three times
a day.  A prescription was given for that.

He also has a post-traumatic seizure disorder and still has one
seizure a month which is unacceptable.  I would recommend that
blood levels be checked and if his Dilantin blood levels would
permit it that he be increased to 5 Dilantin or 6 Dilantin per
day.  If these are toxic ranges on Dilantin then he should be
started on another medication such as Depakote or Tegretol.  This
would supplement the effectiveness of Dilantin, his current
medication.  Mysoline and Phenobarbital probably would not work
well because of the history of narcolepsy but sometimes can be
taken without undue ill effect, but this would be unusual to
expect.

I appreciate the opportunity of helping in his care.

                                    Sincerely,



                                    Richard A. Thompson, M.D.

RAT:ar
12-18-86

# EXHIBIT B

CHS901 - Patient Record Synopsis

## Patient Description

| | | | | | |
|---|---|---|---|---|---|
| ADC#: | 037353 | Inmate Name: | WALTON, GEARY W. | SSN: | |
| Race/Sex: | Black    Male | DOB: | 01/11/1959 | Age:  62    Status:  Active | |
| Location: | ASPC-E COOK UNIT | Bed:  8-AB    808L | Custody:  Medium | | |
| Medical Grade: | 2 | | | | |
| Admission Date: | 02/24/1989 | Job Assignment:  Unassigned | Earliest Release: | | |

### Current Health Problem/Conditions ( - 29 of 29)

| ID# | Category | Type | National HIE Code(s) | Diagnosis Code | Reaction | Severity | Onset Date | Last Encounter Date |
|---|---|---|---|---|---|---|---|---|
| 033 | Chronic Conditions | Cirrhosis | SNOMED: 19943007 - Cirrhosis of liver (disorder) | Unspecified cirrhosis of liver [K74.60] | | | 09/09/2021 | 09/09/2021 |
| 032 | Mental Health | Mental Health | SNOMED: 48694002 - Anxiety (finding) | Post-traumatic stress disorder, unspecified [F43.10] | | | 06/07/2020 | 06/07/2020 |
| 031 | Other Diagnosis | Other Diagnosis | SNOMED: 61582004 - Allergic rhinitis (disorder) | Allergic rhinitis, unspecified [J30.9] | | | 03/22/2020 | 03/22/2020 |
| 030 | Other Diagnosis | Other Diagnosis | SNOMED: 235595009 - Gastroesophageal reflux disease (disorder) | Gastro-esophageal reflux disease without esophagitis [K21.9] | | | 11/25/2019 | 11/25/2019 |
| 029 | Other Diagnosis | Other Diagnosis | SNOMED: 74641007 - Ill-defined disease (finding) | Illness, unspecified [R69] | | | 06/05/2019 | 06/06/2019 |
| 028 | Chronic Conditions | Diabetes Type II | SNOMED: 313436004 - Type II diabetes mellitus without complication (disorder) | Type 2 diabetes mellitus with hyperglycemia [E11.65] | | | 03/26/2019 | 09/09/2020 |
| 027 | Other Diagnosis | Other Diagnosis | SNOMED: 249504006 - Passing flatus (finding) | Flatulence [R14.3] | | | 12/07/2018 | 12/07/2018 |
| 026 | Other Diagnosis | Other Diagnosis | SNOMED: 63480004 - Chronic bronchitis (disorder) | Unspecified chronic bronchitis [J42] | | | 05/08/2018 | 05/08/2018 |
| 025 | Other Diagnosis | Other Diagnosis | SNOMED: 285398000 - Right sided abdominal pain (finding) | Unspecified abdominal pain [R10.9] | | | 01/04/2018 | 01/04/2018 |
| 024 | Other Diagnosis | Other Diagnosis | SNOMED: 267036000 - Dyspnea (finding) | Dyspnea, unspecified [R06.00] | | | 01/04/2018 | 01/04/2018 |
| 023 | Mental Health | Mental Health | SNOMED: 47505003 - Posttraumatic stress disorder (disorder) | Posttrauma tic stress disorder [F43.10] | | | 09/26/2017 | 09/26/2017 |
| 022 | Mental Health | Mental Health | SNOMED: 162207007 - Complaining of nightmares (finding) | Nightmare disorder [F51.5] | | | 09/26/2017 | 09/26/2017 |
| 021 | Other Diagnosis | Other Diagnosis | SNOMED: 162308004 - Throbbing headache (finding) | Headache [R51] | | | 09/06/2017 | 09/06/2017 |
| 020 | Other Diagnosis | Other Diagnosis | SNOMED: 48694002 - Anxiety (finding) | Anxiety disorder, unspecified [F41.9] | | | 08/08/2017 | 08/08/2017 |
| 019 | Mental Health | Mental Health | SNOMED: 94921000119107 - 94921000119107 | Unspecified mood [affective] disorder [F39] | | | 08/03/2017 | 08/03/2017 |
| 018 | Other Diagnosis | Pt. Specific Chronic Condition | SNOMED: 162673000 - General examination of patient (procedure) | Encounter for other administrative examinations [Z02.89] | | | 07/21/2017 | 07/21/2017 |
| 017 | Other Diagnosis | Other Diagnosis | SNOMED: 102572006 - Edema of lower extremity (finding) | Localized edema [R60.0] | | | 07/06/2017 | 07/06/2017 |
| 016 | Other Diagnosis | Other Diagnosis | SNOMED: 11833005 - Dry cough (finding) | Cough [R05] | | | 07/06/2017 | 07/06/2017 |
| 015 | Other Diagnosis | Other Diagnosis | SNOMED: 14760008 - Constipation (disorder) | Constipation, unspecified [K59.00] | | | 07/06/2017 | 07/06/2017 |
| 014 | Chronic Conditions | Cirrhosis | SNOMED: 19943007 - Cirrhosis of liver (disorder) | Other cirrhosis of liver [K74.69] | | | 05/16/2017 | 09/09/2020 |
| 013 | Chronic Conditions | Hypertension | SNOMED: 1201005 - Benign essential hypertension (disorder) | Essential (primary) hypertension [I10] | | | 01/11/2017 | 09/09/2021 |
| 011 | Other Diagnosis | Other Diagnosis | SNOMED: 609558009 - Essential tremor (disorder) | Essential tremor [G25.0] | | | 11/23/2016 | 11/23/2016 |
| 010 | Other Diagnosis | Other Diagnosis | | Heartburn [R12] | | | 10/01/2015 | 03/12/2015 |
| 009 | Other Diagnosis | Other Diagnosis | | Other chronic pain [G89.29] | | | 10/01/2015 | 03/12/2015 |
| 006 | Allergies - Medication | Aspirin | | | Other | Unknown | 03/12/2015 | 03/12/2015 |

**Pending Appointments (1 - 25 of 25)**

| Scheduled | Type | Location | Staff |
|---|---|---|---|
| 02/28/2022 | Health Services | ASPC-E COOK UNIT | Thomas, Siji |
| 11/23/2021 | Health Services | ASPC-E COOK UNIT | Generic, Practitioner |
| 03/23/2021 | Health Services | ASPC-E COOK UNIT | Kary, Sharon |
| 09/06/2020 | Health Services | ASPC-E COOK UNIT | Generic, Lab Tech |
| 07/17/2020 | Health Services | ASPC-E COOK UNIT | Sulley, Adiza |
| 05/14/2020 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 02/03/2020 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 12/05/2019 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 11/21/2019 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 10/03/2019 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 08/22/2019 | Health Services | ASPC-E COOK UNIT | Emerson, Jane |
| 10/05/2018 | Health Services | ASPC-E COOK UNIT | Thomas, Siji |
| 06/07/2018 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 03/12/2018 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 02/12/2018 | Health Services | ASPC-E COOK UNIT | Generic, Optometrist |
| 12/28/2017 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 12/07/2017 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 11/13/2017 | Health Services | ASPC-E COOK UNIT | Emerson, Jane C |
| 11/11/2017 | Health Services | ASPC-E COOK UNIT | Weigel, Natalya |
| 09/04/2017 | Health Services | ASPC-E RYNNING CLOS# | Hahn, Betty |
| 08/11/2017 | Health Services | ASPC-E RYNNING CLOS# | Hahn, Betty |
| 08/04/2017 | Health Services | ASPC-E RYNNING CLOS# | Emerson, Jane C |
| 07/21/2017 | Health Services | ASPC-E RYNNING CLOS# | Hahn, Betty |
| 03/30/2017 | Health Services | ASPC-E RYNNING CLOS# | Babich, Glen |
| 03/10/2017 | Health Services | ASPC-E RYNNING CLOS# | Emerson, Jane C |

**Current Transfer Holds (1 - 2 of 2)**

| Placed | Type | Expires |
|---|---|---|
| 09/10/2021 | Medical Hold | 12/09/2021 |
| 08/15/2017 | Medical Hold | 02/28/2018 |

| ID# | Category | Type | National HIE Code(s) | Diagnosis Code | Reaction | Severity | Onset Date | Last Encounter Date |
|-----|----------|------|----------------------|----------------|----------|----------|------------|---------------------|
| 005 | Other Diagnosis | Other Diagnosis | | Heartburn [787.1] | | | 03/12/2015 | 03/12/2015 |
| 004 | Other Diagnosis | Other Diagnosis | | Chronic pain NEC [338.29] | | | 03/12/2015 | 03/12/2015 |
| 003 | Chronic Conditions | Hepatitis C | | Chrnc hpt C wo hpat coma [070.54] | | | 03/12/2015 | 03/12/2015 |
| 002 | Chronic Conditions | Heart Murmur, Rheumatic, etc | | | | | 10/09/2014 | 10/09/2014 |

### ICD-9/ICD-10 (1 - 36 of 36)

| Date | Encounter Type | Staff | ICD | Diagnosis |
|------|----------------|-------|-----|-----------|
| 09/09/2021 | Provider - Chronic Care | Thomas, Siji | K74.60 | Unspecified cirrhosis of liver |
| 05/04/2020 | Provider - Follow Up Care | Thomas, Siji | R51 | Headache |
| 03/22/2020 | Provider - Sick Call - Scheduled | Bell, Natalie | J30.9 | Allergic rhinitis, unspecified |
| 11/25/2019 | Provider - Follow Up Care | Gay, Maureen | B18.2 | Chronic viral hepatitis C |
| 11/25/2019 | Provider - Follow Up Care | Gay, Maureen | K21.9 | Gastro-esophageal reflux disease without esophagitis |
| 06/06/2019 | Provider - Follow Up Care | Gay, Maureen | R69 | Illness, unspecified |
| 03/26/2019 | Provider - Follow Up Care | Thomas, Siji | E11.65 | Type 2 diabetes mellitus with hyperglycemia |
| 12/07/2018 | Provider - Chronic Care | Thomas, Siji | R14.3 | Flatulence |
| 05/08/2018 | Provider - Sick Call - Scheduled | Okafor, Linda | J42 | Unspecified chronic bronchitis |
| 01/04/2018 | Provider - Sick Call - Scheduled | Okafor, Linda | R06.00 | Dyspnea, unspecified |
| 01/04/2018 | Provider - Sick Call - Scheduled | Okafor, Linda | R10.9 | Unspecified abdominal pain |
| 11/11/2017 | Provider - Chronic Care | Weigel, Natalya | B18.2 | Chronic viral hepatitis C |
| 11/11/2017 | Provider - Chronic Care | Weigel, Natalya | I10 | Essential (primary) hypertension |
| 09/27/2017 | Provider - Sick Call - Scheduled | Hahn, Betty | B17.10 | Acute hepatitis C without hepatic coma |
| 09/06/2017 | Provider - Sick Call - Scheduled | Hahn, Betty | R51 | Headache |
| 09/05/2017 | Provider - Sick Call - Scheduled | Hahn, Betty | B18.2 | Chronic viral hepatitis C |
| 08/08/2017 | Provider - Review | Hahn, Betty | F41.9 | Anxiety disorder, unspecified |
| 08/02/2017 | Provider - Sick Call - Scheduled | Hahn, Betty | B18.2 | Chronic viral hepatitis C |
| 08/02/2017 | Provider - Sick Call - Scheduled | Hahn, Betty | K74.69 | Other cirrhosis of liver |
| 07/21/2017 | Provider - Medication Renewal | Hahn, Betty | Z02.89 | Encounter for other administrative examinations |
| 07/06/2017 | Provider - Sick Call - Scheduled | Gay, Maureen | K59.00 | Constipation, unspecified |
| 07/06/2017 | Provider - Sick Call - Scheduled | Gay, Maureen | R05 | Cough |
| 07/06/2017 | Provider - Sick Call - Scheduled | Gay, Maureen | R60.0 | Localized edema |
| 05/16/2017 | Provider - Chronic Care | Babich, Glen | B18.2 | Chronic viral hepatitis C |
| 05/16/2017 | Provider - Chronic Care | Babich, Glen | K74.69 | Other cirrhosis of liver |
| 01/11/2017 | Provider - Chronic Care | Barker, Robert | B18.2 | Chronic viral hepatitis C |
| 01/11/2017 | Provider - Chronic Care | Barker, Robert | I10 | Essential (primary) hypertension |
| 01/11/2017 | Provider - Sick Call - Scheduled | Barker, Robert | B18.2 | Chronic viral hepatitis C |
| 11/23/2016 | Provider - Chronic Care | Huggins, Elizabeth | G25.0 | Essential tremor |
| 10/01/2015 | Provider - Chronic Care | Graham, Stephen | B17.10 | Acute hepatitis C without hepatic coma |
| 03/12/2015 | Provider - Chronic Care | McKamey, Arlene | 070.54 | Chrnc hpt C wo hpat coma |
| 03/12/2015 | Provider - Chronic Care | McKamey, Arlene | 338.29 | Chronic pain NEC |
| 03/12/2015 | Provider - Chronic Care | McKamey, Arlene | 787.1 | Heartburn |
| 03/12/2015 | Provider - Chronic Care | McKamey, Arlene | B18.2 | Chronic viral hepatitis C |
| 03/12/2015 | Provider - Chronic Care | McKamey, Arlene | G89.29 | Other chronic pain |
| 03/12/2015 | Provider - Chronic Care | McKamey, Arlene | R12 | Heartburn |

### DSM-IV/DSM-V/ICD-9/ICD-10 (1 - 4 of 4)

| Date | Encounter Type | Staff | Axis | Diagnosis |
|------|----------------|-------|------|-----------|
| 06/07/2020 | MH - Psychiatrist - Scheduled | Raza, Syed | | Post-traumatic stress disorder, unspecified [F43.10] |
| 09/26/2017 | MH - Psychiatrist - Scheduled | Rastogi, Kamal, MD | | Nightmare disorder [F51.5] |
| 09/26/2017 | MH - Psychiatrist - Scheduled | Rastogi, Kamal, MD | | Posttraumatic stress disorder [F43.10] |
| 08/03/2017 | MH - Psychiatrist - Initial Psychiatric Evaluation | Rastogi, Kamal, MD | | Unspecified mood [affective] disorder [F39] |

### Current Drug Prescriptions (1 - 9 of 9)

| Issued | Drug Classification | Dosage | Frequency | Status | Expiration Date |
|--------|---------------------|--------|-----------|--------|-----------------|
| 10/26/2021 | PAROXETINE HCL TABS (Paxil)/40 Mg | 1 | QHS | Received from Pharmacy | 04/23/2022 |

| Issued | Drug Classification | Dosage | Frequency | Status | Expiration Date |
|--------|--------------------|--------|-----------|--------|-----------------|
| 10/21/2021 | FUROSEMIDE (UD) TABS (Lasix)/40 Mg | 1 | BID | Received from Pharmacy | 04/26/2022 |
| 10/21/2021 | POTASSIUM CL TBCR (Klor-Con M20)/20 Meq | 1 | QD | Received from Pharmacy | 04/26/2022 |
| 10/17/2021 | Montelukast Sodium Tab (Singulair)/10MG | 1 | QD | Received from Pharmacy | 04/22/2022 |
| 09/26/2021 | Capzasin-Hp Cre (Capsaicin)/0.1% | 1 app | BIDPRN | Received from Pharmacy | 03/24/2022 |
| 09/20/2021 | Metformin Hcl Tab (Glucophage)/1000MG | 1 | BID | Received from Pharmacy | 03/26/2022 |
| 07/30/2021 | PROPRANOLOL HCL TABS (Inderal)/20 Mg | 1 | BID | Received from Pharmacy | 02/02/2022 |
| 09/09/2021 | Loratadine Tab (Claritin)/10MG | 1 | QD | Discontinued - Other | 03/07/2022 |
| 08/02/2021 | PAROXETINE HCL TABS (Paxil)/40 Mg | 1 | QHS | Discontinued - Other | 01/28/2022 |

### Current OTC Medications

| Type | Begin Date | End Date | Specify Comments |
|------|-----------|----------|------------------|
| | | No Rows Found | |

### Provider Caseload

| Assigned | Staff | Job Title |
|----------|-------|-----------|
| | No Rows Found | |

### Latest Encounters (1-4 of 4)

| Category | Date | Type | Staff | Location |
|----------|------|------|-------|----------|
| Medical Provider | 10/26/2021 | Provider - Medication Renewal | Attobra, Ivy | ASPC-E COOK UNIT [A14] |
| Dental | 11/17/2021 | Dental - Routine Treatment | Gill, Sundeep, DDS | ASPC-E COOK UNIT [A14] |
| Mental Health | 10/26/2021 | MH - Mid-Level - Scheduled | Attobra, Ivy | ASPC-E COOK UNIT [A14] |
| Nursing | 11/07/2021 | Nurse - Sick Call - Scheduled | JONES, LINDLEY | ASPC-E COOK UNIT [A14] |

### Current Alerts

| Generated Date | Type | Due Date | Generated By |
|----------------|------|----------|--------------|
| | | No Rows Found | |

### Last Vital Signs

| | | | | |
|---|---|---|---|---|
| Order Date: | 11/18/2021 | Temperature: 96.2 | Pulse: 52 | Respiration: 16 |
| BP: | 112 / 70 | Weight: 167 lb. | Height: 5 ft. 8 in. | |
| | Right: 0 | | | |
| Corrected Vision: | Left: 0 | | | |
| | Both: 0 | | | |

### Current Treatment Orders

| Category | Type | Approximate Begin Date | Approximate End Date | Status |
|----------|------|------------------------|----------------------|--------|
| | | No Rows Found | | |

### Key Lab Test Results

| Order Date | Specimen Date | Results Date | Type | Result | Value |
|------------|---------------|--------------|------|--------|-------|
| | | No Rows Found | | | |

### Current Special Waivers/Diets (1-1 of 1)

| Started | Type | Expires |
|---------|------|---------|
| 11/29/2020 | Liquid Supplements - 2 Per Day | 11/29/2021 |

### Pending Lab Tests (1-5 of 5)

| Ordered | Category | Type | Priority |
|---------|----------|------|----------|
| 09/09/2020 | Medical Provider | DIAGNOSTIC PANEL 2, AZ | Special (Draw-cmnts;Rslts-48h) |
| 09/09/2020 | Medical Provider | HBA1C - GLYCOSOLATED HEMOGLOBIN | Special (Draw-cmnts;Rslts-48h) |
| 09/09/2020 | Medical Provider | HEP C RNA QUANT | Special (Draw-cmnts;Rslts-48h) |
| 08/26/2020 | Medical Provider | SARS COV 2 RNA, RT PCR (COVID 19) | Special (Draw-cmnts;Rslts-48h) |
| 08/25/2020 | Nursing | SARS COV 2 RNA, RT PCR (COVID 19) | Rout (Draw-10days;Rslts-48hrs) |

EXHIBIT B-1



**Arizona Department of Corrections**
**Rehabilitation and Reentry**

**Inmate Request for Paralegal Assistance**

| | |
|---|---|
| Please *PRINT* or *TYPE* all information in all areas Clearly. | |
| Use a PEN and PRESS FIRMLY. | |

| INMATE'S NAME *(Last, First M.I.)* | ADC NUMBER | INSTITUTION/UNIT |
|---|---|---|
| WALTON, G | 037353 | ASPC-E-Cook-SBSL |

Briefly describe your complaint: *(Use a blank sheet of paper if additional room is needed.)*

Ms. Ulibarri, I am in receipt of a DVD containing my medical records from T&T Investigation via of court order, with regards to my TBT & PTSD. I am respectfully submitting this letter to request a printout copy of pages 350, 351 & 352 from the DVD for exhibits to my handwritten Petition in support of my claims asserted. And I am hereby respectfully requesting your approval. "Court deadline pending."

Thank you!

Received pgs. 350 351 & 352 per paralegal
approval on 3/21/22
TDixon

| INMATE SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| GWalton | 03/18/2022 |

| DESIGNATED STAFF NAME *(Last, First M.I.)* | DESIGNATED STAFF SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|---|
| DIXON, T | TDixon | 3/21/22 |

Paralegal Review

☐ A meeting will be scheduled with a Paralegal.

☐ Your complaint does not involve a qualified legal claim. You may pursue this issue in accordance with Department Order #902, Inmate Legal Access to the Courts.

☐ Unclear. A meeting will be scheduled with a Paralegal to determine if assistance can be provided.

| PARALEGAL'S NAME *(Last, First M.I.)* | SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|---|
| Telephonic | & Ulibarri | 3/21/22 |

Your appointment with the Paralegal has been scheduled for _____
                                                                    Date *(mm/dd/yyyy)*

at _____ a.m./p.m. in the _____
        Time                              Location

Please bring this authorization and all related documents to the meeting.

| DESIGNATED STAFF NAME *(LAST, FIRST M.I.)* | DESIGNATED STAFF SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|---|
| DIXON, T | TDixon | 3/21/22 |

Distribution:    White – Inmate Resource Center/Library
                 Canary – Inmate
                 Copy – Legal Access Monitor
                 Copy – Paralegal
                 Final Copy - Inmate

902-1
3/9/17

| A' | NOTES: None |
|---|---|
| P | DRUG PRESCRIPTION: TERAZOSIN HCL CAPS (Hytrin)/1 Mg    VERBAL BY: Raza, Syed<br>EFFECTIVE DT: 06/07/2020   RT: PO   DOSE: 1   STRENGTH: 1 Mg   METHOD: Normal Dose<br>FREQ: QPM   FOR: 90 DAYS   EXPIRATION DATE: 09/04/2020   REFILLS: 2   STATUS: Discontinued - Other<br>DRUG COMMENTS:<br><br>lower the dose to 1 mg qpm<br><br><br>NOTES: None |
| E | NOTES: None |
| H/S | MH Status: Outpatient-Medication Monitoring Only |
|  | STAFF: Raza, Syed    Psychiatrist |

ADC #: 037353    Inmate Name: WALTON, GEARY W.
ENCOUNTER DATE: 06/07/2020   TIME: 13:13:46   DURATION: minutes   TYPE: MH - Provider - Medication Renewal
LOCATION: ASPC-E COOK UNIT [A14]   SETTING: Clinic

| S | Are interpreter services needed for this inmate: No<br>NOTES: This encounter was system generated when the prescription drug below was reordered from the Drug Prescription Order screen<br>CHSS037B. |
|---|---|
| O | NOTES: None |
| A | NOTES: None |
| P | DRUG PRESCRIPTION: PAROXETINE HCL TABS (Paxil)/40 Mg    VERBAL BY: Raza, Syed<br>EFFECTIVE DT: 06/14/2020   RT: PO   DOSE: 1   STRENGTH: 40 Mg   METHOD: Normal Dose<br>FREQ: QHS   FOR: 90 DAYS   EXPIRATION DATE: 09/11/2020   REFILLS: 2   STATUS: Received from Pharmacy<br>DRUG COMMENTS:<br><br>None<br><br><br>NOTES: None |
| E | NOTES: None |
| H/S | MH Status: Outpatient-Medication Monitoring Only |
|  | STAFF: Raza, Syed    Psychiatrist |

ADC #: 037353    Inmate Name: WALTON, GEARY W.
ENCOUNTER DATE: 05/21/2020   TIME: 07:05:26   DURATION: minutes   TYPE: Provider - Review
LOCATION: ASPC-E COOK UNIT [A14]   SETTING: Clinic

| S | Are interpreter services needed for this inmate: No<br>NOTES: Consult Encounter generated by Consult Request entry |
|---|---|
| O | NOTES: None |
| A | NOTES: None |
| P | Consultation Request: Off-site Clinic<br>Service Type:    Priority: Routine<br>NOTES: None |
| E | NOTES: None |
| H/S | MH Status: Outpatient-Medication Monitoring Only |
|  | STAFF: Thomas, Siji, NP    Nurse Practitioner |

ADC #: 037353    Inmate Name: WALTON, GEARY W.
ENCOUNTER DATE: 05/04/2020   TIME: 12:40:10   DURATION: minutes   TYPE: Provider - Medication Renewal
LOCATION: ASPC-E COOK UNIT [A14]   SETTING: Clinic

| S | Are interpreter services needed for this inmate: No<br>NOTES: This encounter was system generated when the prescription drug below was reordered from the Drug Prescription Order screen<br>CHSS037B. |
|---|---|
| O | NOTES: None |
| A | NOTES: None |
| P | DRUG PRESCRIPTION: Acetaminophen Tab (Tylenol)/325MG    VERBAL BY: Thomas, Siji, NP<br>EFFECTIVE DT: 05/04/2020   RT: PO   DOSE: 2   STRENGTH: 325Mg   METHOD: Normal Dose<br>FREQ: BIDPRN   FOR: 180 DAYS   EXPIRATION DATE: 10/30/2020   REFILLS: 5   STATUS: Received from Pharmacy<br><br>NOTES: None |
| E | NOTES: None |
| H/S | MH Status: Outpatient-Medication Monitoring Only |
|  | STAFF: Thomas, Siji, NP    Nurse Practitioner |

ADC #: 037353    Inmate Name: WALTON, GEARY W.
ENCOUNTER DATE: 05/04/2020   TIME: 09:06:29   DURATION: minutes   TYPE: Provider - Follow Up Care
LOCATION: ASPC-E COOK UNIT [A14]   SETTING: Clinic

| S | Are interpreter services needed for this inmate: No<br>NOTES: 61 yo Black male with past medical hx of type 2 diabetes, chronic hepatitis C, hypertension, allergic rhinitis and GERD here today c/o |
|---|---|

headache. states it has been going on for past couple of months. pretty much every day and last all day. states he has hx of headaches in the past which comes and goes but this is pretty much consistent. states it hurts bilateral temples. also hurts behind the eyes. states he gets sensitive to light and sound. states he had been dizzy all the time. denies any nausea or vomiting. states he will go completely blind whil reading and then gradually starts come back. states he feel weak in legs as well. states people say he walks like drunk. last HBA1C is 6.9. states he drinks plenty of water. does not know what triggers the headache. states since he shot in head in 1979 has bullet fragments in the head.

| O | NOTES: |
|---|--------|

Neuro: A/O X 4. Grossly intact
Cardiac: S1S2 no murmurs click or gallops
Resp: even and non-labored. CTA
GI: soft and non-tender. Active bowel sounds in all quadrants. No masses or organomegaly.
Musculoskeletal: strength: 5/5. DTR: 2+. Normal ROM.
Skin: clean dry and intact. Capillary refill WNL.

| A | MEDICAL DIAGNOSIS:   Headache [R51] |
|---|-------------------------------------|
|   | NOTES: possible post traumatic headache vs migraine |

| P | DRUG PRESCRIPTION: Pain Reliever Plus Tab (Excedrin)/250-250-65MG   VERBAL BY: Thomas, Siji, NP |
|---|--|

EFFECTIVE DT: 05/04/2020   RT: PO   DOSE: 2   STRENGTH: 250-250-65Mg   METHOD: Normal Dose
FREQ: BIDPRN   FOR: 180 DAYS   EXPIRATION DATE: 10/30/2020   REFILLS: 0   STATUS: Discontinued - Other

DRUG PRESCRIPTION: Full Spectrum B/Vitamin C/Fa Tab (Nephrovite)/B/ VIT C   VERBAL BY: Thomas, Siji, NP
EFFECTIVE DT: 05/04/2020   RT: PO   DOSE: 1   STRENGTH: B/ Vit C   METHOD: Normal Dose
FREQ: QD   FOR: 180 DAYS   EXPIRATION DATE: 10/30/2020   REFILLS: 5   STATUS: Received from Pharmacy

NOTES:

possible post traumatic headache vs migraine: Excedrin migraine 2 tabs PO BID PRN ordered for headache
Nephrovite 1 tab daily po ordered
advised to drink adequate fluids
will continue to monitor
RTC PRN

| E | NOTES: |
|---|--------|

Discussed POC with patient
Advised to make medical needs known via HNR.

| H/S | MH Status: Outpatient-Medication Monitoring Only |
|-----|--------------------------------------------------|
|     | STAFF: Thomas, Siji, NP   Nurse Practitioner |

ADC #: 037353    Inmate Name: WALTON, GEARY W.
ENCOUNTER DATE: 05/02/2020   TIME: 10:33:07   DURATION: minutes   TYPE: Provider - Sick Call - Scheduled
LOCATION: ASPC-E COOK UNIT [A14]   SETTING: Clinic

| S | Are interpreter services needed for this inmate: No |
|---|-----------------------------------------------------|

NOTES:

ONSITE PL f/u in next 2 wks to review labs and complete PE regarding multiple chronic issues- dizzy, migraines, abd pain, memory lapses

reports hx of migraines since shot in 1979--4x in head, right temple, forehead, and twice in right shoulder. frequency is "almost daily", states they are worsening
states "head hurts so bad until vision goes black". states he can be reading and will forget what he is reading before he finishes the paragraph. reports these symptoms occur daily.
reports yesterday read the same page up to 10x and still cannot recall what he is reading. states that he has been attempting to read the same book for 3 weeks and still cannot complete it--this is abnormal for him as he can usually read up to 3 books a week without difficulty.

reports loosing balance while walking for no reason--does not trip. states occurs regularly throughout the day. states he feels like he is loosin control of this
due to all these symptoms he feels fatigued and worn out. states at times he feels like he does not want to get up out of bed or move. state he feels so sluggish at times that he will wait until the last second to get up and go due to feeling so worn out.

reports onset of worsening symptoms since approx. 11/2019. states that they are progressing and worsening at a very fast rate, especially with reading, memory and balance.

ROS:
General: denies fever, chills, difficulty sleeping, fatigue.
HEENT: denies sinus pain, ear pain, epistaxis, rhinorrhea, dysphagia--reports intermittent blurred vision, dizziness, headache, vertigo
Neck: denies pain, rigidity, swollen tender glands, goiter, mass.
Chest: denies chest pain, shortness of breath, cough, dyspnea.
Heart: denies palpitations, chest pain, edema, pacemaker.
GI: denies diarrhea, nausea, vomiting, hematemesis, hematochezia or melena.
GU: denies discharge, hematuria, dysuria, nocturia.
Musculoskeletal: denies joint pain, muscle pain, limited ROM, joint swelling.
Skin: denies urticaria, rash, pruritis, acne
Neurologic: denies tremors, paresthesias, numbness, seizures.

2/3/2020
AST 42
ALT 24
PLT 158
GFR 98
CREAT 1.00
TOT CHOL 132
HDL 50
LDL 65
TRI's 87
TSH 1.398
T3 43.1
T4 7.11
IRON 122
RBC 4.06
WBC 3.88
H/H 14.0/40.3
A1c 6.9
HIV NEG

The following XRay Results were processed on 03/30/2020 14:45
SINUSES, PARANASAL COMP MIN 3V
FINDINGS: The osseous structures are unremarkable, including grossly intact orbital rims. Maxillary, ethmoid, frontal, and sphenoid sinuses are unremarkable without significant opacification. No blowout fracture is seen.
CONCLUSION: prior gunshot injury. Metal fragments noted.

well-developed well nourished and in no acute distress. appears stated age.
HEENT: normocephalic and atraumatic. PERRL, cardinal gaze with nystagmus and jumping of eyes noted to patients right with bilateral eyes. Patient reports blurry vision and dizziness when looking to the right during exam. Red reflex intact. Conjunctivae are clear and lids are intact. TMI left, unable to visualize due to surgically altered canal on right. Pinna and tragus are normal and non-tender. Nares are patent no bleeding, clear discharge noted, boggy turbinates noted. Moist oral mucosa. Oropharynx without exudate, edema, hyperemia.
Neck: supple, no lymphadenopathy, no carotid bruit, no tenderness, no JVD.
Chest: lungs are clear to auscultation bilaterally. No wheezing, no rhonchi, no rales. Non-labored respirations noted, normal chest excursion and normal to percussion.
Heart: S 1 S 2: regular rate and rhythm. No murmurs, rubs, or gallops.
GI: abdomen is soft, non-tender, non-distended. Bowel sounds auscultated in all four quadrants.
GU: deferred
Musculoskeletal: gait is normal. Patient ambulating without assistance. Extremities are warm to touch. Color good. No clubbing, cyanosis, or edema noted. BUE strength and grip equal and strong. BUE ROM WNL. C/S ROM, tilt, turn side/side WNL.
Neurological: Awake, alert, oriented to name, time, and place. No tremors noted able to follow commands.
Skin: Physiologic skin coloring, texture is smooth, warm, dry, intact.

A   NOTES:

Allergic rhinitis, unspecified
Headache

P   DRUG PRESCRIPTION: Cetirizine Tab (Zyrtec)/10MG   VERBAL BY: DeMello, Marie
EFFECTIVE DT: 05/02/2020   RT: PO   DOSE: 1 tablet   STRENGTH: 10Mg   METHOD: Normal Dose
FREQ: QD   FOR: 30 DAYS   EXPIRATION DATE: 05/31/2020   REFILLS: 0   STATUS: Discontinued - Other

Consultation Request: Off-site Clinic
Service Type:   Priority: Routine
NOTES:

optometry consult already placed on 3/10/2020---pending
started on fluticasone spray & singulair--reports worsening of symptoms
d/c singulair and trail Zyrtec
CT of head d/t neuro changes
symptomatic tx, may continue tx at home
submit HNR for any medical need

MEDICATION DISCONTINUED VIA THIS ENCOUNTER- Medication Name: 'Montelukast Sodium Tab', Order Number: 2321298, Authorized By: DeMello, Marie. Timestamp: 05/02/2020 16:07:29

E   NOTES: poc

H/S   MH Status: Outpatient-Medication Monitoring Only

STAFF: DeMello, Marie   Nurse Practitioner

ADC #: 037353   Inmate Name: WALTON, GEARY W.
ENCOUNTER DATE: 04/29/2020   TIME: 06:25:07   DURATION: minutes   TYPE: Provider - Medication Renewal
LOCATION: ASPC-E COOK UNIT [A14]   SETTING: Clinic

S   Are interpreter services needed for this inmate: No
NOTES: This encounter was system generated when the prescription drug below was reordered from the Drug Prescription Order screen CHSS037B.

EXHIBIT B-2

August 23, 2019

Dear Mr. Walton,

This letter is in response to the MH HNR you submitted dated 8/23/19 inquiring about when your PTSD diagnosis began. I need to correct a discrepancy in your HNR when you wrote that Psych NP Leifson saw you for a follow-up appointment on 11/9/2017. In fact, Dr. Rastogi saw you on that date. Psych NP Leifson saw you on 10/26/2017. (See enclosed snapshot of MH documentation for relevant dates.) Dr. Rastogi is the person who diagnosed you with PTSD and with Nightmare Disorder on 9/26/2017. That is the date you were diagnosed with PTSD. As to when you actually began to experience symptoms of PTSD, per your report you began to experience symptoms of PTSD shortly after you were shot in 1979.

PTSD was not classified as a mental health diagnosis until 1980 when it was first listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM). Prior to 1980, what is called PTSD was known as "shell shock" and "combat fatigue" and was associated with individuals returning from war. With each update of the DSM, the definition and diagnostic criteria for PTSD evolved as the mental health professionals' understanding of the disorder expanded. (See enclosed articles concerning the history of the PTSD diagnosis.)

In the current DSM-5, PTSD is classified as a disorder that can occur after exposure to any traumatic event (not just war) where a person believes his or her life is in danger, he or she will experience serious bodily harm, or he or she has witnessed these events occurring to another person. Acute Stress Disorder can be diagnosed from three days to one month after the trauma. If the Acute Stress Disorder is not treated or does not resolve within a month of the traumatic event, it then becomes or is considered Post-Traumatic Stress Disorder. According to the DSM-5, "Although acute stress disorder may progress to posttraumatic stress disorder (PTSD) after 1 month, it may also be a transient stress response that remits within 1 month of trauma exposure and does not result in PTSD" (p. 284, DSM-5).

Please read the enclosed articles. If you still have questions after reading them, let me know and I'll do my best to better explain.

Dr. R. Tenrreiro

Dr. R. Tenrreiro
Licensed Psychologist
Eyman complex/Cook yard

March 30, 2018

Re: Geary W. Walton, ADC# 037353

To Whom It May Concern:

Mr. Walton was diagnosed with Post-Traumatic Stress Disorder on 9/26/2017 by psychiatrist, Dr. Kamal Rastogi. On that date he was also diagnosed with Nightmare Disorder by Dr. Rastogi. These diagnoses continue to be in effect and form the basis of his mental health treatment.

Here are the ICD-10 codes for these diagnoses:

F43.10 – Post-Traumatic Stress Disorder

F51.5 – Nightmare Disorder

*Ruth Tenrreiro, Psy. D.*

Ruth Tenrreiro, Psy.D.
Licensed Psychologist
ASPC – Eyman/Cook



**MARICOPA**
**INTEGRATED**
**HEALTH SYSTEM**

*Count on us to care.*

**Maricopa Integrated Health System**
**Release of Information**
**2601 E. Roosevelt St.**
**Phoenix, AZ 85008**
**602-344-5266**

12/6/2016

**GEARY W. WALTON – ADC: 37353**
**ASPC EYMAN/SMU**
**PO BOX 4000**
**FLORENCE, AZ 85132**

We have received your request for the health records on

All records prior to the year 2000 have been purged to an offsite storage facility therefore due to the age of the records you are requesting, we will need additional time to process your **Research time can take up to 10 weeks** from the date of this letter.

Should you have any questions, you may contact us at (602) 344-5266, Monday through Friday, 8:30 a.m. until 4:30 p.m. Mountain/Arizona time, or write to the address above, attention Health Information Management - Release of Information.

Sincerely,

Release of Information Representative
Health Information Management Department



**MARICOPA**
**INTEGRATED**
**HEALTH SYSTEM**

*Count on us to care*

Maricopa Integrated Health System
2601 E. Roosevelt
Phoenix, AZ. 85008
602-344-5266

December 6, 2016

GEARY W. WALTON – ADC: 37353
ASPC EYMAN/SMU
PO BOX 4000
FLORENCE, AZ 85132

This mailing contains PRIVILEGED and CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEE LISTED ABOVE. If medical records developed outside of Maricopa Integrated Health System (MIHS) are included, MIHS cannot guarantee the completeness of those medical records. At the date of this disclosure, the attached documents are a true and complete copy of all records of the above mentioned individual which were kept and maintained by the facility in the usual course of business. Use, copying or distributing of these by any other person is strictly prohibited. Please notify Maricopa Integrated Health System(MIHS), Health Information Management Department (HIM) at (602) 344-5266 immediately if you have possession of these documents in error, or you may return the documents to the address below.

Maricopa Integrated Health System
Health Information Management Department
2601 E. Roosevelt Street
Phoenix, Arizona 85008

MARICOPA COUNTY GENERAL HOSPITAL

*DISCHARGE SUMMARY*

WALTON, GARY
60 ⬤ 20 9
David Deaver, M.D.

*87*                          *NIF*

IMPRINT HOSPITAL PLATE HERE

DICTATE BRIEFLY OR WRITE:  SUMMARY OF PERTINENT HISTORY AND PHYSICAL FINDINGS
                          SUMMARY OF PERTINENT LAB AND X-RAY FINDINGS
                          COURSE IN HOSPITAL (TREATMENT — INCLUDE CONSULTATIONS)
                          DISCHARGE MEDICATIONS
                          FINAL DIAGNOSIS AND CONDITION ON DISCHARGE
                          DISCHARGE PLANNING

ADMISSION DATE ___11/4/79___          DISCHARGE DATE ___11/6/79___ ✓

CONSULTATIONS:  Ophthalmology.

ATTENDING:  Dr. Sonntag.

HISTORY OF PRESENT ILLNESS:  The patient is a ~~40~~ *20* year old black man who was apparently shot approximately four times at 2:00 p.m. on 11/4/79. He was initially taken to St. Joseph's where x-rays and stabilization treatment was performed and a tetanus shot given. The patient was subsequently transferred to MCGH, in lethargic but arousable condition with stable vital signs.

PAST MEDICAL HISTORY:  Noncontributory.

MEDICATIONS:  None.

ALLERGIES:  None.

SOCIAL HISTORY:  ETOH abuse none. Questionable history of IV drug abuse.

PHYSICAL EXAMINATION:  BP 154/92, pulse 80. Patient was oriented to person and time, not place or situation. He was lethargic but arousable. HEENT: Head with multiple gunshot wounds to the right forehead with blood and tissue (probably brain tissue) oozing from two of the wounds prior to closure. The right eye was swollen shut with conjunctival hemorrhage and edema. Pupils were equal, round and reactive to light and consensual light reflex was intact. The right fundus was distorted with a possible retinal detachment and many hemorrhages. Left fundus is normal. EOM's are intact. TM's intact. Right cheek was swollen and blood was present in both nares. Pharynx was clear with positive gag. Neck was supple with no hematoma or bruits. Chest was clear. Heart showed a regular rate and rhythm without murmur or gallop. Abdomen was benign. GU and rectal exams were normal. Extremities: An entrance and exit wound on the right shoulder with no limitation of movement or neurologic deficit. Neurologic exam showed all four extremities to be mobile. Pinprick and DTR's were symmetric. Questionable Babinski on right. Cranial nerves VII-XII were grossly intact and patient exhibited frontal lobe signs throughout the exams.

_____ M.D.
SIGNATURE

_____ M.D.
COUNTERSIGNATURE

MA-3820
2-PPS-157                          *DISCHARGE SUMMARY*

X-RAYS:  Right shoulder was intact.  Face:  Bullet fragments over the right maxillary sinus with clouding and some fragments in the right cheek.  Skull:  Fracture of the right frontotemporal bone with bullet fragments in the right forehead to behind the left eye and fragments in the right frontal sinus toward the palate and spine.  C-spine films:  No fracture or dislocation but a bullet fragment approximately 1.5 inches lateral to C2 and anterior.  Chest x-ray clear.  CT scan showed bullet fragments in the right frontotemporal area and left middle cranial fossa and within the right orbit, within the maxillary sinus and within the nasal pharynx.  There was no midline shift.

ADMISSION LABS:  WBC 17,000 with 18 stabs and 62 segs.  H/H 15 and 45.  PT and PTT, platelets normal.  SMA-6 normal, except a K of 3.3.  Urine drug screen positive for Cocaine.  SMAC-20 was normal, except a phosphorus of 2.3.  CPK markedly elevated at 1520, LDH of 362, total bilirubin of 1.6.  Subsequent laboratory values were similar.

HOSPITAL COURSE:  The patient was admitted to the SICU following discussions with Dr. Sonntag, Neurosurgeon on call, who felt that local debridement, antibiotic coverage, and steroids were all that was necessary at the present time.  Dr. Alt the ENT staff felt no life threatening ENT or neck injury had been sustained and agreed with the antibiotic coverage and possibly an esophagogram later during the hospital stay.  An emergency Ophthalmology consult was obtained, which initially showed a bullous right retina, which was detached nasally from 12:00 to 6:00 or 7:00 with scattered flecks of intravitreal hemorrhage.  Difsue retinal edema was present but no metal or perforation site was seen.  Patient would not take his right eye past the midline toward the nose, probably secondary to small metallic foreign bodies present between the optic nerve and the medial rectus.  The Ophthalmology plan was to plan for orbital exploration and removal of foreign bodies in the very near future.  The patient remained alert and oriented during his hospital stay and showed gross improvement in his eye exam by 11/6/79.  The vision was improved with retina now flat and apparently spontaneously reattached, obviating surgery for that.  However, he had a marked restriction of the medial gaze and surgery was still anticipated for this problem.  He remained stable neurologically and expressed the desire on 11/6/79 to leave against medical advice.  Despite persistent attempts on the staff to persuade him to stay for continued intravenous antibiotic therapy (IV Nafcillin and Chloramphenicol, as well as Decadron, Dilantin, and Cimetidine), patient still insisted upon leaving.  Approximately 3:00 on 11/6/79 he removed his IV's and got up to leave the Intensive Care Unit.  He was temporarily restrained until an AMA form was signed.  He became somewhat violent and abusive to the staff and actually swung at one or two of them before signing the AMA form.  No one was injured and the patient left without medications or future appointments being made, because of his quick departure.

WALTON, GARY
60 89 20 9
Page Three


DISCHARGE DIAGNOSES:
1. Multiple gunshot wounds to the head and shoulder.

2. Restriction of medial gaze, secondary to #1.

DISPOSITION: Patient left AMA and no medications were prescribed or clinic appointments made.

DISCHARGE CONDITION: Guarded.


DD:ab
D:11/7/79
T:11/9/79

David Deaver, M.D.


Countersignature

MARICOPA COUNTY DEPARTMENT OF HEALTH SERVICES

## MARICOPA COUNTY GENERAL HOSPITAL

# PHYSICIAN'S ADMISSION FORM

### SURGERY

## STANDARD HISTORY

(CROSS OUT QUESTION NUMBER IF ANSWER NOT AVAILABLE)

EMER RM

60 87 20 9
WALTON GEARY
M 01 11 59

*Garry Walton*

**(1)**  IF HISTORY IS NOT RELIABLE CHECK HERE ☐

**(2) CHIEF COMPLAINT(S)**

| | | | | |
|---|---|---|---|---|
| | HEMATEMESIS ☐ | INCONTINENCE ☐ | PAIN ☐ | ULCERATION ☐ |
| AMENORRHEA ☐ | DENTAL ☐ | INFECTION ☐ | SWELLING ☐ | VAGINAL BLEEDING ☐ |
| CONSTIPATION ☐ | EMESIS ☐ | HEMATURIA ☐ | JAUNDICE ☐ | VARICOSE VEINS ☐ |
| CONVULSION ☐ | FEVER ☐ | HEMOPTYSIS ☐ | TRAUMA ☐ | WEAKNESS ☐ |
| DIARRHEA ☐ | | HEMORRHOIDS ☐ | MELENA ☐ | TONSILS ☐ | WEIGHT LOSS ☒ |
| DYSURIA ☐ | GENITAL PROLAPSE ☐ | HERNIA ☐ | TUMOR ☐ | |
| | | INABILITY TO VOID ☐ | NEEDS RECONSTRUCTION ☐ | |

IF OTHER: SPECIFY _____ GSW to head _____

**(3) PRESENT ILLNESS**   DURATION (FILL IN NUMBER) _____ HOURS _____ DAYS; _____ MONTHS _____ YEARS

PATTERN:   CONTINUOUS ☐   INTERMITTENT ☐   PROGRESSIVELY WORSE ☐   OTHER ☐

ADDITIONAL PERTINENT DETAILS  20 y/o b♂ who was shot multiple times in his head by an angry girlfriend. Patient 1st taken to St. Joseph's Hospital then transferred here. Incident occurred @ approx 1³⁰ pm 5 hours PTA. He has been stable neurologically and cardiovascularly.

**(4) PAST HISTORY**

A. ALLERGIES:  NONE ☒   DRUG ☐   SEASONAL ☐   GENERAL ☐   SPECIFY _____

B. BLEEDING–CLOTTING:   NORMAL ☐   ABNORMAL ☐   SPECIFY _____

C. PREVIOUS HOSPITALIZATION(S)

| WHEN? | DIAGNOSIS? | TYPE OF SURGERY: | HOSPITAL | LENGTH OF STAY |
|---|---|---|---|---|
| | Unable to obtain | | | |
| | | | | |
| | | | | |
| | | | | |

USE CODES BELOW

| | | | |
|---|---|---|---|
| 1. EENT | 3. RESPIRATORY | 5. GU | 7. MUSCULO-SKELETAL | 9. METABOLIC | 11. NEOPLASTIC |
| 2. CARDIOVASCULAR | 4. G–I–BILIARY | 6. GYN | 8. NEUROLOGICAL | 10. TRAUMATIC | 12. OTHER |

## OTHER PAST ILLNESSES AND REVIEW OF SYSTEMS

| CODE | ONSET M-Months Y-Years | DURATION P-Present M-Month Y-Years | SPECIFY |
|---|---|---|---|
| | | | Unable to obtain |
| | | | |
| | | | |

HO 5360 10-77

**D. HABITS**

SMOKING  NO  YES

PAST ☐ ☐  CIGARETTES ☐ CIGARS ☐ PIPE ☐  DURATION  MONTHS_____ YEARS_____ AMOUNT PER DAY_____
PRESENT ☐ ☐

COMMENTS _____

ALCOHOL  NONE ☑  SOCIAL ☐  MODERATE ☐  HEAVY ☐  CLASSIFY_____

DURATION  MONTHS_____ YEARS_____ AMOUNT _____

COMMENTS _____

**E. MEDICATIONS**  CURRENT AND/OR PAST  NONE ☑

| CODE | DRUG | CODE | DRUG | CODE | DRUG |
|---|---|---|---|---|---|
| 1 | SEDATIVES OR TRANQUILIZERS | 5 | CATHARTICS | 9 | STEROIDS AND/OR OTHER HORMONES |
| 2 | ANALGESICS AND/OR NARCOTIC | 6 | CARDIAC DRUGS | 10 | ANTICOAGULANTS |
| 3 | ANTACIDS OR SMOOTH MUSCLE ANTISPASMODICS | 7 | DIURETICS | 11 | DIABETIC |
| 4 | ANTICONVULSANTS | 8 | ANTIBIOTICS | 12 | OTHERS |

| CODE | SPECIFY DRUG, DOSE AND DURATION | PAST | PRESENT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**5  FAMILY HISTORY**

CODE FOR RELATION  CODE FOR STATUS  CODE FOR ILLNESS
M—MOTHER   S—SIBLING     A—ALIVE     1. ALCOHOLISM   4. CONGENITAL ANOMALY   7. DIABETES   10. TUBERCULOSIS
F—FATHER   C—CHILDREN    D—DEAD      2. CANCER       5. DEAD OF "OLD AGE"    8. HEMORRHAGIC 11. WELL
IF OTHER: SPECIFY         U—UNKNOWN   3. CARDIOVASCULAR 6. DEAD OF UNKNOWN CAUSE 9. MENTAL ILLNESS 12. OTHER

| RELATION | STATUS | ILLNESS CODE | SPECIFY    ENCIRCLE CAUSE OF DEATH |
|---|---|---|---|
| | | | Unable to obtain |
| | | | |
| | | | |
| | | | |
| | | | |

**6  ADDITIONAL COMMENTS**

X-Rays — ℝ shoulder OK
face — fragments over ℝ maxillary sinus
c̄ clouding - some fragments ℝ cheek
Skull Fracture ℝ frontotemporal bones
Bullett fragments ℝ forehead to behind ℝ
ℒ eye. " ℝ frontal sinus to ℝ palate ?
C-Spine - fragments 4½" lateral to C₂
CXR — Clear

FORM COMPLETED Exact Time _____  A.M. P.M.  SIGNED _____ M.D.

## STANDARD PHYSICAL EXAMINATION

SURGERY

CROSS OUT QUESTION NUMBER IF ANSWER NOT AVAILABLE

**7** **GENERAL DESCRIPTION** WELL ☐ ACUTELY ILL ☑ CHRONICALLY ILL ☐ KEMPT? YES ☑ NO ☐

NUTRITION GOOD ☑ POOR ☐ CACHETIC ☐ OTHER ☐

**8** **MENTAL STATUS** ALERT ☐ CONFUSED ☐ DISORIENTED ☑ UNRESPONSIVE ☐ *place, time*

**9** **VITAL SIGNS** B.P. 154 , 92 MM; PULSE 80 /MIN: TEMPERATURE ___ °F

RESPIRATION RATE ___ /MIN;

**10** **SKIN** NORMAL ☐ ERUPTION ☐ PALLOR ☐ JAUNDICE ☐ DEHYDRATION ☐ WOUNDS ☑ CONTUSIONS ☐

INFECTION ☐ OTHER ☐ SPECIFY *GSW to head*

**11** **HEENT**

| | CHECK NORMAL | ABNORMAL | SPECIFY ABNORMAL FINDINGS |
|---|---|---|---|
| EAR | ☑ | ☐ | |
| NOSE | ☑ | ☐ | *Blood in nares* |
| THROAT | ☑ | ☐ | |
| ORAL CAVITY | ☑ | ☐ | |
| NECK | ☑ | ☐ | |
| EYE: EXTERNAL | ☐ | ☑ | *® eye swollen shut, conjunctival* |
| MUSCLES | ☐ | ☐ | *hemorrhage* |
| FUNDUS | ☐ | ☑ | *Could not test adequately* |
| PUPILS | ☑ | ☐ | *® eye multiple hemorrhages, blurred retina* |
| CRANIUM | ☐ | ☑ | *GSW is diagrammed* |
| FACE & NECK | ☐ | ☑ | |

**12** **CHEST** NORMAL ☑ ASYMMETRICAL ☐ INCREASED AP DIAMETER ☐ SCARS ___

LUNGS

| | | Normal | Decreased | Increased | RALES | RHONCHI | WHEEZING | RUB |
|---|---|---|---|---|---|---|---|---|
| BREATH SOUNDS | LEFT | | | | | | | |
| | RIGHT | | | | | | | |
| VOICE SOUNDS | LEFT | | | | | | | |
| | RIGHT | | | | | | | |
| PERCUSSION NOTE | LEFT | | | | | | | |
| | RIGHT | | | | OTHER: | | | |

CODE:

Not Examined = N.E.

BREAST NORMAL YES ☑ NO ☐ DISCHARGE NO ☐ YES ☐ CHARACTER ___

MASS: NO ☐ YES ☐ SPECIFY SIZE ___ LOCATION: L ☐ R ☐

HEART RHYTHM: REGULAR ☑ IRREGULAR ☐ SIZE: NORMAL ☑ ENLARGED ☐ Location & Character

MURMURS: NONE ☑ SYSTOLIC ☐ DIASTOLIC ☐ INTENSITY ___

SPECIFY ___

**13** **ABDOMEN** NORMAL ☑ ASYMMETRICAL ☐ DISTENDED ☐ OBESE ☐ SCAPHOID ☐ ___

BOWEL SOUNDS NORMAL ☑ ABSENT ☐ HYPOACTIVE ☐ HYPERACTIVE ☐

TENDERNESS NONE ☑ MODERATE ☐ MARKED ☐ GENERALIZED ☐ LOCALIZED ☐

| LOCATION | TENDERNESS | | MASS IN CM. | | SPASM SPECIFY LOCATION | SCAR SPECIFY LOCATION | HERNIA SPECIFY LOCATION |
|---|---|---|---|---|---|---|---|
| EPIGASTRIUM | | | | | | | |
| PERIUMBILICAL | | | | | | | |
| UQ | LT ☐ | RT ☐ | LT ☐ | RT ☐ | | | |
| LQ | LT ☐ | RT ☐ | LT ☐ | RT ☐ | | | |
| GROIN | LT ☐ | RT ☐ | LT ☐ | RT ☐ | | | |
| FLANK | LT ☐ | RT ☐ | LT ☐ | RT ☐ | | | |
| SUPRAPUBIC | LT ☐ | RT ☐ | LT ☐ | RT ☐ | | | |

LIVER NORMAL ☑ TENDER ☐ EDGE ___ CM BELOW COSTAL MARGIN: SURFACE ___

SPLEEN PALPABLE? NO ☑ YES ☐ ___ CM BELOW COSTAL MARGIN ___

KIDNEY NO ☐ LT ☐ RT ☐ TENDERNESS? NO ☐ ANTERIOR LT ☐ RT ☐ POSTERIOR LT ☐ RT ☐

BLADDER NOT PALPABLE? ☑ ABNORMAL ☐ SPECIFY ___

**14** **GENITALIA** NORMAL ☑ ABNORMAL ☐

PELVIC FINDINGS (A) DEFERRED? CHILD ☐ MALE ☑ Other Reason SPECIFY ___

(B) NORMAL ☐ ABNORMAL ☐ SPECIFY ___

(C) PAPANICOLAOU DONE ☐ NOT DONE ☐ REASON ___

**15** **RECTAL**  NOT EXAMINED ☐   HEMORRHOIDS? NO ☐ YES ☐
NORMAL ☑   MASS? NO ☐   DESCRIBE _____
GROSS BLOOD ☐  OCCULT BLOOD ☐  SPHINCTER TONE DECREASED NO ☒ YES ☐
STOOL ABSENT ☐   COLOR (SPECIFY) _____

**PROSTATE**   GENERALIZED ☐   DESCRIBE
ENLARGED ▶ LOCALIZED ☐
NORMAL ☐

**16** **PULSE**

| LOCATION | LEFT | | | | RIGHT | | |
|---|---|---|---|---|---|---|---|
| | NORMAL | ABSENT | WEAK | | NORMAL | ABSENT | WEAK |
| FEMORAL | NORMAL ☐ | ABSENT ☐ | WEAK ☐ | | NORMAL ☐ | ABSENT ☐ | WEAK ☐ |
| POPLITEAL | NORMAL ☐ | ABSENT ☐ | WEAK ☐ | | NORMAL ☐ | ABSENT ☐ | WEAK ☐ |
| ANKLE | NORMAL ☐ | ABSENT ☐ | WEAK ☐ | | NORMAL ☐ | ABSENT ☐ | WEAK ☐ |
| RADIAL | NORMAL ☐ | ABSENT ☐ | WEAK ☐ | | NORMAL ☐ | ABSENT ☐ | WEAK ☐ |

OTHER _____

**17** **EXTREMITIES**   NO ABNORMALITIES ☐

| | UPPER | | LOWER | |
|---|---|---|---|---|
| | L | R | L | R |
| AMPUTATED | | | | |
| DEFORMITY | | | | |
| FRACTURE | | | | |
| VARICOSE VEINS | | | | |
| WOUND | | ✗ | | |
| SCARS | | | | |
| OTHER | | | | |

SPECIFY  GSW to Ⓡ axillary fold.

**18** **EDEMA**  ABSENT ☐   PRESENT ☐   SPECIFY _____

**19** **NEUROLOGIC STATUS**  REFLEXES: NORMAL ☐  HYPERACTIVE ☒  ABSENT ☐  UNEQUAL ☐  BABINSKI ☐
OTHER (SPECIFY)  Motor 5/5 bilat

**20** **DIAGNOSTIC IMPRESSION**  LIST ALL DIAGNOSES
1  Multiple GSW to head.
2
3
4
5
6
7
8

**21** **CONSULTATION**  NECESSARY?  NO ☐  **STOP** (IF YES) CONTINUE) SERVICE _____
PURPOSE  (A) EMERGENCY TREATMENT ☐  (B) ADVICE ☐  (C) CARE BY CONSULTING SERVICE ☐
SPECIFIC INDICATION _____

**22** **SELECTION OF SPECIAL CHART**  CHECK APPROPRIATE ANSWER(S)
BREAST ☐  DENTAL ☐  ENDOCRINE ☐  EXTREMITY—TRAUMA ☐  EYE ☐  G.I. BILIARY ☐  GYN ☐  HERNIA ☐
HEAD & NECK ☐  NEUROSURGERY ☐  PERIPHERAL—VASCULAR ☐  RECONSTRUCTIVE-PLASTIC ☐
SHOCK—BURN—MULTIPLE TRAUMA ☐  THORAX—HEART ☐  UROLOGY ☐

**23** **ADMISSION RECORD**  (A)  THIS IS ☐  IS NOT ☐  AN ELECTIVE ADMISSION.
(B)  THIS IS ☐  IS NOT ☐  RELATED TO PREVIOUS ADMISSION.

**24** **REASONS for ADMITTING PATIENT to SURGICAL SERVICE**
(A)  SURGERY CANDIDATE  OBVIOUS ☐  PROBABLE ☐  POSSIBLE ☐  WHEN?  RIGHT AWAY ☐  NEXT DAY ☐  AFTER WORK UP ☐
(B)  NO SURGERY EXPECTED ☐

**25** **EMERGENCY**  WORK-UP OR THERAPY IN ADMISSIONS NECESSARY?  NO ☐  **STOP** (IF YES CONTINUE)
AIRWAY OBSTRUCTION ☐  SHOCK ☐  COMA ☐  ACUTE POISONING ☐  ACUTE PAIN and/or BLEEDING  SPECIFY TYPE _____
ACUTE SEVERE HYPOXIA ☐  BURN ☐  FRACTURE ☐  OPEN WOUND ☐  or VOMITING ☐
IF OTHER TRAUMA OTHER REASON FOR EMERGENCY  SPECIFY _____
SPECIFY EMERGENCY PROCEDURE _____

**26** **GENERAL THERAPEUTIC PLANS**  ① Skull, C-spine films,  ② CT Scan
③ Decadron  ④ Neuro checks q 2°
_____ Therapeutics?

FOR ORDERS USE NEXT FORM.   A.M. P.M.  SIGNATURE _____ M.D.

EXHIBIT · 2

(/adzone/view/32/)

# Exploring the Connection Between Brain Injuries and Criminal Behavior

Loaded on JUNE 9, 2017 by Christopher Zoukis (/news/author/christopher-zoukis/) published in Prison Legal News June, 2017 (/news/issue/28/6/), page 22

Filed under: Brain Injury (/search/?selected_facets=tags:Brain%20Injury), Statistics/Trends (/search/?selected_facets=tags:Statistics/Trends). Location: United States of America (/search/?selected_facets=locations:998).

## by Christopher Zoukis

Thanks in large part to recent well-publicized incidents involving the National Football League, the impact of brain injuries has become a topic of interest to the general public. When highly-paid professional athletes who participate in contact sports engage in bizarre, criminal or suicidal behavior, people want to know why.

Traditionally, the American public has been less interested in the relationship between brain injuries and crimes that do not involve athletes. However, a growing body of scientific evidence linking brain trauma and criminal behavior is beginning to alter such apathy.

In 2013, Kim Gorgens, a neuropsychologist and clinical associate professor at the University of Denver, began to study possible links between brain injuries and criminal behavior. In collaboration with Judy Dettmer, clinical director of the Colorado Brain Injury Program, and Jennifer Gafford, staff psychologist for the Denver County Sheriff's Office, Gorgens assessed 80 prisoners at the Van Cise-Simonet Detention Center in Denver over a two-year period.

The findings from that study were dramatic and have led to much more in-depth research: fully 96 percent of the assessed prisoners were found to have suffered moderate or severe brain trauma. [See: *PLN*, Nov. 2013, p.18].

Gorgens' data corresponded with previous related research. A 2007 study of federal prisoners found a brain injury rate of 87 percent; a 2006 review of 200 prisoners in Australia reported an 82 percent rate; and a 2008 examination of 990 Minnesota prisoners revealed a rate of 80 percent.

Contrasted with an estimated six percent of the general population that suffers from brain injuries, such findings suggest some level of correlation between brain trauma and criminal behavior.

Among professional athletes, repeated blows to the head have been shown to lead to chronic traumatic encephalopathy, or CTE – a progressive brain disease that is associated with anger, depression, impaired judgment and poor impulse control.

A 2009 study of brain injuries in Maryland found that 28 percent of patients who experienced head trauma became aggressive within three months of the injury.

The anger and aggression often associated with traumatic brain injury (TBI) may lead to behavior that results in criminal charges and thus incarceration. A 2009 analysis in the journal *Brain Injury* found that adults with a history of TBI tend to enter prison at a younger age.

The Australian study determined that the presence of brain injuries correlated with criminal conviction rates twice as high as in the general population. Among males, the rate for the general population was 10 percent, jumping to 19 percent for those with brain injuries; for females the rate more than doubled from 4 to 9 percent.

A February 2017 study, "Traumatic Brain Injury and Recidivism Among Returning Inmates," published in the journal *Criminal Justice and Behavior*, examined rearrest rates among released Indiana prisoners who were evaluated using the Ohio State University Traumatic Brain Injury Identification instrument. The report found that offenders with TBI had higher rates of recidivism.

Yet while science has established a link between brain injuries and criminal behavior, it has not been able to establish direct causation. Regardless, courts are starting to take evidence of TBI into consideration in criminal cases. Between 2005 and 2012, at least 1,500 prosecutions involved defenses that included neuroscience.

There is currently no standard of evidence available in the U.S. legal system to measure the impact of brain trauma on criminal culpability, however. Juries and judges must make such determinations with input from experts, but with no clear foundational criteria.

The culpability of a particular defendant is not the only aspect of the criminal justice system where brain injuries are relevant. Researchers are also encouraging corrections officials to take TBI into account when designing and implementing rehabilitation programs.

"The presence of traumatic brain injuries should affect the way we treat incarcerated offenders," stated Adam Kolber, a professor at Brooklyn Law School who specializes in neurolaw and bioethics.

Not everyone agrees that brain injuries should be considered when weighing offenders' culpability. Prof. Gorgens recalled receiving angry phone calls and emails chiding her for sympathizing with criminals. One person said he "wanted to squeeze my head until shit came out of my ears, so that I would get some sense," she said. "They thought our agenda was to try to overturn convictions, like we were going to excuse the criminal behavior with a magic wand."

Amy Blackman, a former prison guard, once dismissed considerations of why a given person engages in criminal behavior.

"I spent a lot of time not caring about the brain," Blackman remarked, referring to her years in corrections. "It was very black and white. Overall, the philosophy was 'nail 'em and jail 'em.'"

But when she began working as a case manager at the Denver Sheriff's Health Services unit, counseling prisoners caused her to change her perspective. Instead of "trying to put the hammer down and hope they change," she began "looking at the deeper reasons why they act the way they act and thinking about how we can help them."

Researchers suggest that at the very least, findings related to a link between TBI and criminal behavior highlight potential benefits from routine screening for brain injuries, as well as for developing programs tailored to the particular challenges that such injuries present.

Form 0026
NR S 75

# OFFICE MEMO    ARIZONA STATE PRISON    Florence, Arizona

TO:  Marlene Landau, Counselor South Unit    Date:  June 2, 1980

FROM:  Rolland Deputy, M.D.

SUBJECT:  Walton, Gary  ASP #37352

"There are multiple bullet fragments superimposing the face and right frontal
region.  There is one fragment that appears to be within the cranial vault
posterior to the posterior clinoid on the left side of the skull."

- - As per X-ray report 3/27/80, read by Donald Jacobson, M.D.

Rolland Deputy, M.D.
Chief of Medical Services

RD;jl

cc:  medical record
     files

EXHIBIT No. 33

ARIZONA STATE PRISON COMPLEX

DIVISION OF HEALTH SERVICES

TO: Warden Hargett, North Unit          DATE:     2/4/81

FROM: Dr. Deputy

SUBJECT: Walton    ASP #37353

Medical Light Duty [ X ]        Medical Non-Duty [   ]        Other [   ]

Inmate Name _____ Walton, Gary _____ Inmate Number __37353__

is to be placed on ____light____ duty from _2/4/81_ 19__ to _____

19___ for the following reason:

The above inmate has an old gun shot wound of the head, with multiple
fragments in the skull, one of which appears to have penetrated
the skull. He has headaches constantly. He is to be classified
light-duty wit no "jarring" work.

He will be restricted from the athletic field, weight lifting, and/or other

strenuous activities until otherwise notified.


Rolland Deputy, M.D.
Chief of Medical Services

cc: medical record
    file


j1

111    4/81

Case 2:23-cv-02070-DLR--JFM    Document 1    Filed 10/02/23    Page 77 of 86

FLORENCE, ARIZ. 85232

## X-RAY REPORT

| Family Name | First Name | Middle Name | | Room No. | Hosp. No. |
|---|---|---|---|---|---|
| Walton | Gary | | | South | |

Treatment

☐ Examination of    Skull Study    Name—Part

Attending Physician    R Deputy MD.

| | Sex (M)F | Age—Years 21 | X-ray No. 37353 |
|---|---|---|---|
| | Date 3-27-80 | | O.P.D. No. |

Report: multiple GSW 1979

SKULL: There are multiple bullet fragments superimposing the facial region and also in the right frontal region. There is also one metallic foreign body just inferior to the right angle of the mandible. There are a number of these foreign bodies superimposing the medial aspect of the right orbit and there are several densities in the right frontal region having a track like trail to a larger bullet fragment apparently adjacent the inner aspect of the frontal bone. There are also a number of fragments superimposing the right maxillary sinus. There is also one bullet fragment that appears to be within the cranial cavity just posterior to the posterior clinoids and approximately 1 1/4 inches to the left of midline. There is some thickening of the lateral wall of the right maxillary sinus, probably secondary to the old bullet wound and subsequent reforming of the lateral wall of the sinus. There probably also is some thickening of the lining membrane of this sinus.

IMPRESSION: There are multiple bullet fragments superimposing the face and right frontal region; there is one fragment that appears to be within the cranial vault posterior to the posterior clinoid on the left side of the skull.

3-31-80
DJ

D&T: 3/28/80 bcs
FORM 745    Briggs/Will Ross, Inc., Des Moines, Iowa 50306

Signature of Roentgenologist
Donald Jacobson, MD

X-RAY REPORT

47/14

EXHIBIT C

# 1978 CRIMINAL CODE SENTENCING CHARTS
## For Offenses Committed Prior To January 1, 1994

### NON-DANGEROUS OFFENSES

| CLASS | FIRST OFFENSE | | | ONE PRIOR | | | TWO PRIORS | | |
|---|---|---|---|---|---|---|---|---|---|
| | MIN | P | MAX | MIN | P | MAX | MIN | P | MAX |
| 2 | | | | 7 | 10.5 | 21 | 14 | 15.75 | 28 |
| 3 | | | | 5 | 7.5 | 15 | 10** | 11.25 | 20 |
| 4 | | | | 4* | 6 | 8 | 8** | 10 | 12 |
| 5 | | | | 2* | 3 | 4 | 4** | 5 | 6 |
| 6 | | | | 1.5* | 2.25 | 3 | 3** | 3.75 | 4.5 |

▮▮ Probation eligible

### DANGEROUS OFFENSES

| CLASS | FIRST | | | SECOND | | | THIRD | | |
|---|---|---|---|---|---|---|---|---|---|
| | MIN | P | MAX | MIN | P | MAX | MIN | P | MAX |
| 2 | 7** | 10.5 | 21 | 14** | 15.75 | 28 | 21** | 28 | 35 |
| 3 | 5** | 7.5 | 15 | 10** | 11.25 | 20 | 15** | 20 | 25 |
| 4 | 4* | 6 | 8 | 8** | 10 | 12 | 12** | 14 | 16 |
| 5 | 2* | 3 | 4 | 4** | 5 | 6 | 6** | 7 | 8 |
| 6 | 1.5* | 2.25 | 3 | 3** | 3.75 | 4.5 | 4.5** | 5.25 | 6 |

\* Not eligible for suspension, commutation of sentence, probation, pardon or parole or release on any other basis until one-half of the sentence is served.
\*\* Not eligible for suspension, commutation of sentence, probation, pardon or parole or release on any other basis until two-thirds of the sentence is served.

### DANGEROUS CRIMES AGAINST CHILDREN

| §13-604.01 | FIRST OFFENSE | | | ONE PREDICATE OFFENSE | | | TWO PREDICATE OFFENSES | | |
|---|---|---|---|---|---|---|---|---|---|
| | MIN | P | MAX | MIN | P | MAX | MIN | P | MAX |
| CATEGORY A[1] | 15 | 20 | 25 | 25 | 30 | 35 | | LIFE | |
| CATEGORY B[2] | 12 | 17 | 22 | 23 | 28 | 33 | | LIFE | |
| CATEGORY C[3] | 5 | 10 | 15 | 10 | 15 | 20 | | LIFE | |
| CATEGORY D[4] | | | | | | | | | |

▮▮ Probation eligible

[1] First degree involving second degree murder, sexual assault, taking a child for the purpose of prostitution, child prostitution, sexual conduct with a minor or continuous sexual abuse of a child, or involving or using minors in drug offenses.
[2] First degree involving aggravated assault, molestation of a child, commercial sexual exploitation of a minor, sexual exploitation of a minor, child abuse or kidnapping.
[3] First degree involving sexual abuse.
[4] Second degree.

FIRST DEGREE: Not eligible for suspension, commutation of sentence, probation, pardon, parole, work furlough or release on any other basis until the sentence is served. The sentence is consecutive to any other sentence imposed on the person at any time.
SECOND DEGREE: Not eligible for release from confinement on any basis until not less than one-half the sentence is served. The sentence is consecutive to any other sentence imposed on the person at any time.

IN THE Superior COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA,

vs.

Gary Wayne Walton
Defendant.

NO. CR 7176

PLEA AGREEMENT

The State of Arizona and the defendant hereby agree to the following disposition of this case:

**Plea:** The defendant agrees to plead guilty/no contest to:
Lewd and Lascivious Acts, a felony, ARS §13-652

**Terms:** On the following understandings, terms and conditions:

1. The crime carries a sentence no greater than 1-5 ASP

and no less than _probation_
The mandatory minimum (if any) is _none_

The maximum fine that can be imposed is $2000 plus a 10% surcharge, and the special conditions regarding sentence, parole or commutation imposed by statute (if any) are _none_

2. The parties stipulate to the following additional terms:
Defendant's sentence will be the same sentence received in CR 91136. If sentence is different, either party may withdraw this plea or void this agreement.

3. The following charges are dismissed, or if not yet filed, shall not be brought against the defendant:
CR-2 - Lewd and Lascivious Acts is to be dismissed at the time of sentencing

4. This agreement, unless rejected or withdrawn, or reversed upon appeal by defendant, serves to amend the complaint, indictment, or information, to charge the offense to which the defendant pleads, without the filing of any additional pleading. If the plea is rejected or withdrawn, or if the conviction is reversed upon an appeal by the defendant, the original charges and any charges that are dismissed by reason of this plea agreement are automatically reinstated.

5. If the defendant is charged with a felony, he hereby waives and gives up his right to a preliminary hearing or other probable cause determination on the charges to which he pleads. In the event the court rejects the plea, or the defendant withdraws the plea, the defendant hereby waives and gives up his right to a preliminary hearing, or other probable cause determination on the original charges.

(19)

6.   Unless this plea is rejected or withdrawn, the defendant hereby waives and gives up any and all options, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. Defendant further waives and gives up the right to appeal based upon any of the above.

7.   If after accepting this agreement the court concludes that any of its provisions regarding the sentence or the term and conditions of probation are inappropriate, it can reject the plea, giving the state and the defendant each an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges will be automatically reinstated.

8.   The parties hereto fully and completely understand and agree that it is the court's duty to impose sentence upon the defendant and that any sentence either stipulated to or recommended herein in paragraph two is not binding upon the court, and that the court need not accept either the stipulation or recommendation but is bound only by the limits set forth in paragraph one and the applicable statutes.

9.   This plea-bargain agreement in no way affects a civil vehicle forfeiture proceeding pursuant to A.R.S. 36-1041 through 36-1048 or A.R.S. 32-1993, if applicable.

I have personally and voluntarily placed my initials in each of the above boxes and the following box.

I have read and understand the provisions of pages one and two of this agreement. I have discussed the case and my constitutional rights with my lawyer. I understand that by pleading (guilty) (no contest) I will be waiving and giving up my right to a trial by jury, to confront, cross-examine, compel the attendance of witnesses, to present evidence in my behalf, my privilege against self-incrimination and the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein. I fully understand that if, as part of this plea bargain, I am granted probation by the court, the terms and conditions thereof are subject to modification at any time during the period of probation. I understand that if I violate any of the written conditions of my probation, my probation may be terminated and I can be sentenced to any term or terms stated above in paragraph one.

| Date | 6-23-77 | Defendant | _____ |

I have discussed this case with my client in detail and advised him of his constitutional rights and all possible defenses. I believe that the plea and disposition set forth herein are appropriate under the facts of this case. I concur in the entry of the plea as indicated above and on the terms and conditions set forth herein.

| Date | 6-23-77 | Defense Counsel | _____ |

I have reviewed this matter and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

| Date | 6/23/77 | Prosecutor | _____ |

09/2                                                                    19a

Michael K. Jeanes, Clerk of Court
*** Filed ***
02/13/2012 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 0000-097176                                          02/09/2012

HONORABLE EDWARD BASSETT              CLERK OF THE COURT
                                                          T. Nelson
                                                          Deputy

STATE OF ARIZONA                          COUNTY ATTORNEY  CRIMINAL -
                                                          CCC
v.

GEARY WAYNE WALTON (A)                GEARY WAYNE WALTON
                                                          ADOC 037353 FLORENCE SOUTH
                                                          UNIT
                                                          PO BOX 8400
                                                          FLORENCE AZ  85232

                                                          VICTIM SERVICES DIV-CA-CCC

MINUTE ENTRY

The Court has reviewed correspondence dated July 20, 2011 from inmate Geary W. Walton Re: Public Records Request.

It is not clear when the correspondence was forwarded to this division.

The Court has reviewed the file obtained from the Clerk of Court and finds that the file does not contain the Certificate of Discharge referenced by Mr. Walton.

To the extent that Mr. Walton requests authorization from this Court to have access to the Certificate of Discharge in the records of the Department of Corrections, this signed minute entry shall serve as such authorization.

# ARIZONA DEPARTMENT OF CORRECTIONS

## INMATE LETTER
## RESPONSE

**INMATE NAME**__Geary Walton__ **ADC #** 037353

**INSTITUTION/UNIT**__CACF, P.O. Box 9600, Florence AZ 85132__

**FROM**__Kelly Dudley__ **LOCATION** ADC Legal Services **DATE**__April 11, 2012__

This office has received your request for the Certificate of Discharge relating to your incarceration in case SCTMA CR 0000-097176. Pursuant to A.R.S. § 31-221, "a prisoner shall not have access to any prisoner records other than viewing the prisoner's own automated summary record file." Therefore, your request is denied. However, it appears that you have a court-appointed attorney in that case. If your attorney believes it is necessary for him to have the certificate of discharge, he can request the document for his use.

STAFF SIGNATURE _Kelly Dudley_                Date __April 11, 2012__

DISTRIBUTION:      White - Central Office Master File
                   Yellow - Inmate
         Pink - Institutional File

FORM 7051168B
REV. 1/89



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

August 01, 2012

Law Offices of Michael J. Bresnehan, P.C.
Attn: Michael J. Bresnehan
1761 E. McNair Drive, Ste. 101
Tempe, Arizona 85383-5002

RE: Geary W. Walton          ADC# 037353

Dear Mr. Bresnehan,

Enclosed you will find your Certificate of Absolute Discharge from commitment to the Arizona Department of Corrections.

In accordance with Arizona Revised Statute §13-906, persons who have been convicted of two or more felonies and who have received an absolute discharge from imprisonment, may file, no sooner than two years from the date of absolute discharge, an application for the restoration of civil rights with the Superior Court Judge by whom the person was sentenced or his successor in office from the county in which he was originally sentenced.

In accordance with Arizona Revised Statute §13-906.C, if the person was convicted of any felony offense, the person may not file for the restoration of his right to possess or carry a gun or firearm for a minimum of two years from the date of his absolute discharge from imprisonment.

Pursuant to Arizona Revised Statute §13-912, upon completion of term of probation or upon absolute discharge from imprisonment, an upon the completion of payment of any fine or restitution imposed, any person who has not previously been convicted of any other felony shall automatically be restored any civil rights which were lost or suspended by conviction, other than possession of firearms.

When applying for restoration of Civil Rights, you should have the Certificate of Absolute Discharge with you.

Sincerely,

Judith Taylor
Correctional Records Supervisor I

Cc: Master Record File

# STATE OF ARIZONA

## DEPARTMENT OF CORRECTIONS

## CERTIFICATE OF ABSOLUTE DISCHARGE

### GARY WAYNE WALTON

The Arizona Department of Corrections issues this certification of Absolute Discharge from the imposed sentence and judgment in compliance with the requirements of Section 13-906 and 13-912 of the Arizona Revised Statute. It is effective on the expiration date of this commitment.

Cause/Case# 96136; 97176; 102696; 102699
County of: Maricopa
Sentence Began: 11-23-79
Discharge Effective: 6-15-83

Persons convicted of two or more felonies may make applications, no sooner than two years from the effective date of this discharge, for restoration of Civil Rights in accordance with Arizona Revised Statute 13-906. Pursuant to Arizona Revised Statute 13-912 the Civil Rights of persons not previously convicted of any other felony, other than cause/case number above, shall be automatically restored providing that payment of any fine or restitution imposed has been completed.

Distribution To:

\# 37353    Inmate (original)

CO Records  (yellow)

John R. McFarland,
Assistant Director

LAW OFFICES OF

## MICHAEL J. BRESNEHAN, P.C.

1761 E. McNAIR DRIVE, STE. 101
TEMPE, AZ 85283-8002
(480) 345-7082
FAX (480) 345-7083
mbresnehan@hotmail.com

MICHAEL J. BRESNEHAN, J.D.

June 22, 2012

Geary W. Walton
Inmate # **037353**
Central Arizona Correctional Facility
P. O. Box 9600
MB649
Florence, AZ 85132

     *Re:*    *State v. Walton*

Dear Mr. Walton:

     Thank you for your recent letter/pleading. Regarding your request for an 18 U.S.C. § 3143(b) motion, § 3143(b)(2) renders you ineligible for release by the federal district court (see statutes enclosed for your review). The habeas corpus statutes (28 § 2241, et seq.) have no additional provisions for release (see statutes enclosed herewith). You are non-bailable under A.R.S. § 13-3961 (copy enclosed), and that statute appears to relate exclusively to pre-conviction release. While A.R.S. § 13-3961.01 authorizes release in post-conviction state-court matters, it requires a showing that continued confinement would endanger your life due to an existing physical condition. Moreover, it has no bearing on release pending a federal habeas corpus proceeding. If there were some way to obtain your release pending the outcome of the habeas corpus proceeding, I would be pleased to try, but there is none. If you have any other thoughts on the matter, please let me know.

     The pleading you sent me appears to be a state court pleading. Did you file it?

     I look forward to your reply.

               Very truly yours,

               *MICHAEL J. BRESNEHAN, P.C.*

               Michael J. Bresnehan
               Attorney at Law

MJB/jmc
Enclosure